JAMES RIPPETOE *et al.*

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 21, 1898.*

1. CRIMINAL LAW—*assault with intent to commit robbery defined.* An assault with intent to commit robbery is an assault with intent to feloniously and violently take money, goods or other valuable thing from the person of another by force and intimidation.

2. SAME—*what not sufficient to sustain conviction for assault with intent to rob.* The fact that complaining witness was assaulted by a husband upon being discovered in a compromising situation with the latter's wife, and that afterward, and unconnected with the assault, the complaining witness gave his notes for a considerable sum to settle the matter, is not sufficient to convict the husband and wife of assault with intent to commit robbery, even though they may have conspired to extort money from him.

3. SAME—*what evidence incompetent in trial for an assault with intent to rob.* On the trial of a husband and wife for assault with intent to commit robbery, evidence which tends merely to show that the wife was not a virtuous woman is irrelevant and incompetent.

WRIT OF ERROR to the Circuit Court of Henry county; the Hon. W. H. GEST, Judge, presiding.

C. C. CRAIG, and C. D. HENDRYX, for plaintiffs in error.

EDWARD C. AKIN, Attorney General, and EMERY C. GRAVES, State's Attorney, for the People.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Plaintiffs in error, being husband and wife, were convicted in the circuit court of Henry county of the crime of assault with intent to commit robbery, and each was sentenced to the penitentiary. To reverse that conviction they prosecute this writ of error.

We regard the evidence as wholly insufficient to sustain the conviction of the crime charged. Robbery is defined to be "the felonious and violent taking of money,

goods or other valuable thing from the person of another by force or intimidation." (Rev. Stat. chap. 38, sec. 246.) Section 23 of the same chapter provides that "an assault with an intent to commit   *   *   *   robbery   *   *   * shall subject the offender to imprisonment in the penitentiary." The question here is, did the State prove that the defendants made an assault upon Julius Cronau with intent to violently take money, goods or other valuable thing from his person, by force or intimidation?

In his testimony Cronau admits he went to the house of defendants about eight o'clock in the evening for the purpose of having illicit intercourse with the wife, having been told by her that her husband worked at night and would be absent from home at that time; that he took off his clothing and proceeded to occupy the family bed; that while the wife was undressing the husband appeared, and he describes what then took place in the following language: "All at once I heard somebody come in the door and set something on the table and walk right into the bed-room, and grabbed a revolver as if it was in a bureau drawer and pressed it on my head, and asked me what I was doing there. I told him I wasn't doing anything. He said, 'There's no telling what you would have done if I hadn't come in.' I tried to get out of bed and he kept holding me there. I finally sat on the edge of the bed. I did feel pretty bad, and finally we got to talking. He says, 'A man like you, working the way I do, to come to a poor man's home this way.' 'Well,' says I, 'what can I do?' He says, 'You have got to fix this thing up; you have got to do something about this.' I says, 'What can I do? I don't know what I can do. I can give you some money if you come up to the store in the morning.' 'No, sir, that will not do,' he says, 'It has got to be fixed up right to-night.' After I had signed the note I gave him a drink out of a bottle, and a cigar. He said he had a pretty big grocery bill to pay and wanted it right away I said, 'I can't borrow any more money.

I owe more money now than I can pay for a while.' He says, 'You have got to give me money—I have got to have it right away.' I says, 'What about notes?' He went and got ink and paper and a pen, and I wrote out two notes, one for $200 and one for $300."

There is no other testimony in the record tending to prove an assault of any kind. If it be conceded that Cronau was induced to go to the house by conspiracy between the husband and wife for the purpose of extorting money from him, as claimed on behalf of the prosecution, still there is nothing in this evidence tending to show an assault with intent to rob. True, there was an assault by the husband; but there is not the slightest proof that it was accompanied by any act, demand or threat indicating a purpose to take money, goods or other valuable thing from the person. As shown by the cross-examination of this witness, all that took place between the parties by way of demanding money and making the notes was after he had left the bed-room and considerable conversation had taken place, and there is no pretense that the demand for money or giving of the notes was accompanied by an assault, or that the giving of the notes was in any sense induced or procured by the assault made in the bed-room. The record is barren of evidence of the crime charged in the indictment even against the husband, and it is impossible to see upon what ground it can be asserted that there is such evidence against the wife. It is said she was an accessory before the fact. Accessory to what? It is idle to say the evidence in this record establishes the fact, or even tends to prove, that there was any agreement or understanding between the defendants that upon getting Cronau to their house they would assault him, or get money, goods or other valuable things from him by robbery. Had these parties been indicted under section 93 of the Criminal Code, (Rev. Stat. p. 365,) which provides that "whoever, either verbally or by written or printed communication, maliciously

threatens to accuse another of a crime or misdemeanor, or to expose or publish any of his infirmities or failings, with intent to extort money, goods, chattels or other valuable thing, * * * shall be fined in a sum not exceeding $500 and imprisoned not exceeding six months," there would have been at least some reason for contending the evidence proved the crime. But this indictment charges no such offense.

The court also committed error in permitting witnesses on behalf of the State to testify to declarations and conduct of the wife wholly disconnected with the transaction between herself, husband and Cronau. The purpose of this testimony was to show that she was not a virtuous woman. One of these witnesses, H. A. Pugh, simply testified to a conversation which he overheard between the defendants, in which he says she told her husband that a man named Sharp was coming to the house that night, and that before Sharp came the husband went out, and remained away some twenty minutes while Sharp was there, and then returned. On the issue being tried that testimony was wholly irrelevant and incompetent. One Elias Lyman testified to a conversation and conduct between himself and Mrs. Rippetoe which, if true, established the fact that she was a lewd woman, and that he, a married man having married children and grand-children, was oblivious to all sense of duty as a husband and father, and shameless in his manner of testifying to the same. His testimony, if competent, would, in our judgment, be entitled to very little consideration; but it had no proper application to the issue before the jury, and the admission of it over the objection of counsel for the defendants was manifest error. The judgment of the circuit court, however, is reversed upon the ground that the evidence is wholly insufficient to sustain the conviction, and the case will accordingly be remanded, with direction to discharge the prisoners.

*Reversed and remanded.*