(No. 36449.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS PERRY, Plaintiff in Error.

*Opinion filed September 22, 1961.*

GERALD W. GETTY, Public Defender, of Chicago, (JAMES J. DOUGHERTY, Assistant Public Defender, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED

G. Leach, Assistant Attorney General, and John T. Gallagher and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Hershey delivered the opinion of the court:

Louis Perry, referred to herein as defendant, and Walter Ransom were jointly indicted for conspiracy and assault with intent to rob. Defendant moved for a severance. His motion was granted. He was tried by the court without a jury, found guilty and sentenced to the penitentiary for not less than five nor more than fourteen years. He brings this writ of error, contending, first, that he was not tried within the four-month period provided by law, and, second, that the evidence was insufficient to sustain a finding of guilt. We shall examine these two contentions in order.

Defendant was arrested on September 14, 1959. He was not admitted to bail. He was brought to trial on February 8, 1960. On that date he filed a written petition for discharge on the ground that he had not been tried within four months from his commitment as required by statute. (Ill. Rev. Stat. 1959, chap. 38, par. 748.) The court denied his petition for discharge, and this denial is assigned as error.

The record shows that the case had been set for December 9, 1959, a date well within the four-month period. On that date, the judge asked if the defense was ready. Defendant's counsel answered "Not ready for trial" but said he was ready to argue a motion. He then made his motion for a severance, which was granted. Defense counsel then asked the court to transfer the case back to the chief justice for reassignment to another judge. This the court refused to do. The judge then reset the case for February 3, 1960. Defendant's counsel then said, "Judge,

we are ready for trial now." The following colloquy then took place between the court and defense counsel.

"The Court: What is it?

Mr. Doherty: We are ready for trial now. We may have tolled the fourth term by filing the motion · for severance.

The Court: You have tolled it by filing the motion for severance. There is no question about it.

Mr. Doherty: Then this will be order of court to the new date, is that correct?

The Court: That is right. No question of that. I am just saying that—

Mr. Doherty: February 3, 1960."

Defendant contends that he did not cause the delay in his trial and was, therefore, entitled to be set at liberty upon his timely application for discharge. The People, on the other hand, contend that the defendant's motion for a severance contributed to the delay and that he is not entitled to be discharged.

In *People* v. *Iasello*, 410 Ill. 252, we held that the defendant there was not entitled to a discharge under the four-month statute where a substantial portion of the delay was caused by his successful motions for a severance and change of venue, both of which necessitated the return of the case to the chief justice of the criminal court for reassignment to another judge. Defendant concedes that, had his case been returned to the chief justice for reassignment, his motion for severance would necessarily have caused delay and he would not be entitled to a discharge. He argues, however, that in this case the delay was not necessitated by his motion for a severance. In support of this contention, defendant points to the fact that his case was not returned to the chief justice for reassignment and also to the fact that, as events turned out, his original codefendant was not tried on December 9. Defendant also relies heavily upon certain remarks of the trial judge made

at the time of the denial of the motion for discharge. From these remarks defendant seeks to draw the inference that, because of the congestion of the judge's calendar on December 9, it would have been impossible to have tried defendant on that date, and thus argues that the delay was one that was necessitated by the congestion of the calendar, rather than by his motion for a severance. Whether these remarks of the trial judge are properly susceptible to the interpretation placed upon them by defendant is a question with which we need not concern ourselves, for, even though the trial judge may have given the wrong explanation for his denial of the motion for discharge, this would not necessarily mean that he erred in denying the motion.

Defendant in his argument has, in effect, asked for a ruling on the abstract legal question of whether the granting of a motion for severance in and of itself defeats a defendant's rights under the four-month statute irrespective of whether any delay was necessarily occasioned by granting the severance. This court, however, does not rule upon abstract legal problems, but decides concrete cases. The question here is not whether *any* motion for a severance, regardless of the particular circumstances, amounts to a waiver of the four-month statute. The question is, rather, whether under the peculiar circumstances of this particular case, the defendant contributed to the delay in his trial.

The record shows that, on December 9, 1959, when the trial judge called the case and asked if the defense was ready, defendant's attorney answered, "Not ready for trial." He then presented the motion for severance, which was granted. Quite apart from the question of whether the severance in itself necessitated any delay, we believe that the trial judge, relying upon counsel's statement that he was not ready for trial, was fully justified in setting the case for a later date, and that he was not obliged to cancel this new setting when defense counsel abruptly reversed his field and announced he was ready for trial.

Defendant also points to the fact that the case of his codefendant, Ransom, was also continued and that Ransom was not tried on December 9, and cites this as additional evidence that the granting of the severance did not necessitate any delay in his own trial. However, at the time of the granting of defendant's motion for a severance, there is nothing in the record to indicate that the trial judge knew or contemplated that Ransom's case would not be heard that day. The severance having been granted, both could not be tried simultaneously. Under the circumstances the normal and proper thing for the trial judge to do was to set the case of defendant, who had requested the severance, for a later date. Thus defendant's claim that he did not contribute to the delay of his trial is without merit, and the trial court did not err in denying his motion for a discharge.

Defendant next contends that the evidence was insufficient to sustain the finding of guilty. The principal witnesses for the People were Steve Sovich, the victim of the assault, and Walter Ransom, defendant's companion. Sovich was the manager of a supermarket in Hammond, Indiana, but resided in Lansing, Illinois. He testified that, on September 14, 1959, he had driven home from work, arriving home at about 11:20 p.m. He had just started climbing some stairs leading to the front enrance of his home, when he noticed a car, without lights, pulling in behind his car in front of his house. Ransom got out of the car; Sovich started to run and Ransom told him to hold it. Sovich ran through the yard between his house and that of his next-door neighbor, with Ransom chasing him. At one point in the chase, Sovich got a sharp pain in his chest, and Ransom told Sovich he was willing to help him up and wasn't going to hurt him. However, Sovich testified that while Ransom was chasing him he told him to hold it or he would shoot. Charles Adams, a neighbor, came out on his front

porch, and Sovich told him to call the police. Sovich testi-
fied that Ransom had a gun while he was chasing him.

Ransom testified that he and the defendant were to-
gether in a car during most of the day of September 14,
1959. It is unnecessary to relate here all of the movements
and conversation testified to by Ransom. However it ap-
pears that on two occasions during the day they stopped at
a supermarket at Hammond, Indiana, and defendant en-
tered the store, apparently for the purpose of examining
it with a view of robbing or burglarizing it later. On the
last occasion, the defendant came out of the store at about
11:00 p.m. and he and Ransom sat in the car until the
store closed and there were only two cars left in the parking
lot. In a few minutes, these two cars also left, and Ransom
and the defendant followed one of them. Defendant was
doing the driving. They followed the car into Lansing,
and pulled up behind it when it stopped. Defendant told
Ransom to tell the man to come to the car. Ransom ap-
proached Sovich and accosted him. Sovich became hysteri-
cal and started to run, complaining that he had a bad heart
and was going to faint. Sovich dropped the packages he
was carrying and stumbled and fell. Ransom asked Sovich
what he was hollering about and said he wasn't going to
hurt him.

In response to questions from the trial judge, Ransom
said he had never seen Sovich before, that he didn't know
why he wanted Sovich to come to the car, and that he did
not intend to rob Sovich. Ransom also denied that he had
a gun in his hand while he was chasing Sovich, although a
gun was found beside him in the car when he and defendant
were arrested shortly after this incident.

Defendant contends that the evidence at most establishes
only a simple assault and not an assault with intent to rob
as charged in the indictment. In support of this contention,
he points out that no demand for money was made, and

that Ransom denied that he had a gun at the time he chased Sovich and also denied that he had any intention of robbing Sovich. However, a specific demand for money is not necessary to prove the intent to rob. (See *People* v. *Leahy,* 295 Ill. 588, 593; *People* v. *Kuhn,* 291 Ill. 154, 158). Although intent is a matter of fact and cannot be implied as a matter of law, criminal intent may be shown by circumstantial evidence. (*People* v. *Weiss,* 367 Ill. 580; *People* v. *Martishuis,* 361 Ill. 178.) The evidence shows that defendant and Ransom followed Sovich all the way from the supermarket in Hammond, Indiana, to Sovich's home in Lansing, that they pulled up behind Sovich's car with their car lights off, that defendant told Ransom to get Sovich to come to the car, and that Ransom got out of the car, accosted Sovich and chased him, and that a gun was found in the car when the two men were arrested only minutes later. Sovich testified that Ransom had a gun in his hand when he was chasing him, and that Ranson told him to hold it or he would shoot. While Ransom denied having the gun in his hands while chasing Sovich and also denies intending to rob him, the trial judge was not obliged to believe Ransom's testimony in these particulars, especially since no explanation other than that of robbery was suggested by Ransom for his acts. Defendant cites *Rippetoe* v. *People,* 172 Ill. 173, and *Turley* v. *People,* 188 Ill. 628, where convictions of assault with intent to rob were reversed because of failure to prove the specific intent to rob. In each of these cases, however, there was either an explanation for the assault other than the intent to rob, or there were other facts which were inconsistent with the existence of an intent to rob. No such factors are present in this case. All of the circumstances of the assault lead to the inference that it was for the purpose of robbery, and no other explanation has been suggested. Under the circumstances we cannot say the trial judge was not warranted in finding defendant guilty beyond a reasonable doubt.

The indictment charged defendant not only with assault with intent to rob but also with conspiring to rob. He was found guilty on both counts. He contends that the evidence is insufficient to establish his guilt on the conspiracy count. He argues that, if there is any evidence of conspiracy, it was a conspiracy to burglarize a supermarket in Hammond, Indiana, and that since that is not the crime charged in the indictment and also since any such conspiracy took place in Indiana, rather than in Illinois, his conviction under the conspiracy count cannot stand. The indictment charged defendant and Ransom with conspiring to rob Sovich. We think that the evidence, as outlined above, is sufficient to justify a finding of guilty on the conspiracy count. While a common design is the essence of a conspiracy, it is not necessary to prove that common design by direct evidence of an agreement between the conspirators. It is only necessary to show that they pursued a course tending toward the accomplishment of the object of which complaint is made. (*People* v. *Walczak,* 315 Ill. 49, 53.) We believe that the evidence in the record adequately supports a finding that defendant conspired with Ransom to rob Sovich.

In this connection, it is unnecessary to determine whether the conspiracy had its inception in Indiana or Illinois. Although the unlawful combination alone constitutes the offense of conspiracy and no act in furtherance of the unlawful design is necessary to complete the offense, yet every such act is regarded, in law, as a renewal or continuance of the unlawful agreement. A conspiracy once formed is presumed to exist whenever and wherever one of the conspirators does some act in furtherance of its purpose. Since the overt act is a renewal of the conspiracy, the offense is continuous so long as overt acts in furtherance of its purpose are done. The conspiracy is renewed as to all the conspirators at the place where the overt act is done, and it is not necessary to allege the exact place where the conspiracy was originally formed. (*People* v.

*Blumenberg,* 271 Ill. 180, 185.) Regardless of whether or not the conspiracy originated in Indiana, it is clear that it continued in Illinois and that overt acts in furtherance thereof were committed in Cook County, Illinois. The evidence of conspiracy to rob was sufficient to sustain the finding of guilty.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*