THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *v.* HAROLD C. HAYCRAFT *et al.*, Appellants.

(No. 70-181;

Fifth District—February 3, 1972.

*Rehearing denied March 7, 1972.*

McGrady, Madden & Watson, of Gillespie, (D. A. McGrady, of counsel,) for appellants.

R. W. Griffith, Jr., State's Attorney, of Edwardsville, (John Dale Stobbs, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant Harold Haycraft was indicted on two counts of theft of property valued in excess of $150 and two counts of official misconduct. Defendant Betty Haycraft was indicted on two counts of theft of property valued in excess of $150 and two counts of forgery. All counts against both defendants were joined for trial before a jury. Verdicts of guilty were returned on all counts against each defendant. Judgment was rendered on the verdicts and defendants' petitions for probation were denied and each was sentenced to concurrent terms of imprisonment of not less than one nor more than two years. Defendants appeal. Defendants are husband and wife. Harold Haycraft was elected township tax collector of Fort Russell Township in Madison County for two consecutive four year terms, first taking office in 1961.

A brief description of the work of the township tax collector will furnish a better perspective of the case. Each year the County Clerk of Madison County prepares tax collection books. These books show each parcel of assessed real estate and the owner thereof for each township. The taxing bodies within each township prepare an annual tax levy to meet its budgeted and appropriated revenue needs. The proper tax rate is extended against these parcels of real estate by the County Clerk to show the amount due from each. When the extensions are completed the various township tax collectors obtain the books from the County Clerk. This task is normally accomplished in April or May of each year. After the tax books are delivered to the township collectors they prepare the tax bills and mail them to the taxpayers. Upon payment of taxes a receipt is prepared in triplicate, the taxpayer is given the original, one copy is retained by the tax collector, and one copy is given to the County Treasurer, who is the ex-officio County Collector.

Each township tax collector has a tax depositary designated by the Board of Town Auditors. The designation of this depositary and the approval of office expense for the tax collector are the only functions the township has insofar as the township collector is concerned. In all other respects, they are independent offices and the supervisor of the township has no authority whatsoever over the tax collector. In the case of Fort Russell Township, the tax collector was paid directly by the township for office expense allowance. The designated bank depositary for Fort Russell Township during the period in question was the Bethalto National Bank.

The township tax collectors' work of billing, receipting, collecting and depositing tax monies is normally completed around June 1 of each year. The township collectors' books are added up and the total amount reflected in the back of the book and reconciled to the amount of taxes levied and extended in the books. A summary settlement sheet is prepared to disclose the total amount the collector charges himself with having collected. The summary settlement sheet provides a column breakdown showing the amount collected for each taxing district in the township and is verified by the collector. Based on the amount shown to have been collected for each taxing district listed in the summary sheet the township collector should draw a check in the amount payable to the taxing district at the earliest possible time. The settlement checks are to be delivered to the treasurers of the taxing districts and receipts obtained therefor. The tax collectors' account should ordinarily return to zero by late August of early September each year. The applicable statute requires the township collector to make final settlement within twenty days after sixty days after the receipt of the tax books from the county

clerk but in no event later than September 1. Ill. Rev. Stat., 1967, ch. 120, sec. 680.

In a pretrial order a certified public accountant was appointed to compile a special report which shows the tax collections and settlements by the Fort Russell Township Tax Collector for the tax levy years 1961 through 1966 (calendar years 1962 through 1967). His report was admitted into evidence as People's Exhibit 19 and is part of the record of the case. It discloses that for the year 1961 the collection and settlement procedures were regular and no complaint is made with regard to transactions in that year. For the collection years 1962 through 1966 the special report shows that although there were overpayments to some of the taxing bodies, nevertheless the taxes collected for the various taxing bodies exceeded the distributions to the taxing bodies by $87,671.10. The Bethalto Community Unit School District No. 8 sustained a settlement shortage of $44,908.45 and Roxana Community Unit School District sustained a settlement shortage of $22,623.65. Neither of these school districts had given authority to Harold C. Haycraft or Betty Haycraft to withhold these amounts from the tax settlements. While there are shortages as to other of the taxing districts of Fort Russell Township it is the shortages in these two school districts that serve as the basis for the prosecution which is the subject of this appeal.

The shortages came to official attention during the spring of 1967 when the new superintendent of the Bethalto School District was reviewing financial matters of the district. He noted that the district seemed to have received a disproportionately small percentage of the taxes levied. After further investigation Betty Haycraft was asked to come to the school to reconcile the apparent difference. In November 1967, Betty Haycraft gave a check dated October 31, 1967, in the amount of $100,000 to the Bethalto School District but this amount was insufficient to make up the shortage in tax settlements.

During December 1967, two meetings were held at the office of the Madison County Superintendent of Schools for the purpose of obtaining tax settlements owed by the Fort Russell Township Collector to the Bethalto School District. The later of the meetings was held on or about December 14, 1967 and was attended by the defendants and their attorney, the County Superintendent of Schools, the Superintendent of the Bethalto School District and his assistant, the treasurer and the auditor of Bethalto School District. The school treasurer presented Betty Haycraft a ledger showing the balance of tax collections due from the township collector. It was thereupon contended by Betty Haycraft that she had remitted more taxes than she was given credit for and she presented what purported to be a copy of a receipt for $142,694.28 dated

July 1966, from Clara Choat, the school treasurer. Clara Choat denied the signature. Betty Haycraft also exhibited what purported to be a copy of a receipt for $127,073.34 from the predecessor of Clara Choat, Bernice Ward, who also denied her signature on the receipt. Both these receipts were spurious. At this same meeting Betty Haycraft also presented what purported to be a copy of a check dated March 17, 1965, in the amount of $22,000 and a copy of a bank ledger card which supposedly showed that although the $22,000 check was cleared through the bank there was only a $2,000 drop in the bank account. The check was presented in the context that the school district had been paid that amount of money, but proper credit had not been given. Bernice Ward, the then school treasurer, predecessor of Clara Choat, stated she had never seen the check. At the trial it was developed that in November 1967, Betty Haycraft visited the Bethalto Bank and asked and was granted permission to make copies of the ledger cards pertaining to the tax collector's account. Since there was no machine for reproducing these at the bank she was permitted to take the cards from the bank. However, the bank had a policy of microfilming all bank ledger cards and checks that went through the bank but Betty Haycraft did not know of this policy. The cards were returned. On a second occasion in November 1967, Betty Haycraft returned to the bank on a Friday afternoon and requested and was given the six ledger cards. She worked with them until 6.00 P.M. When she returned the cards she returned only five. The cashier requested the sixth card which Betty Haycraft denied having. Betty Haycraft then asked to go to the ladies room. She was accompanied by a female bank employee who asked her if she had the card. Betty Haycraft answered that she did not but when the employee tapped her on the front of her dress the missing card was produced from beneath the front of the dress where it had been secreted. The particular card, People's Exhibit 44, covers the period November 17, 1964, through July 2, 1967. It reflects that a check for $2,000, not $22,000, cleared the bank on March 17, 1965. It was thus established that Betty Haycraft had copied the ledger card, changed the $2,000 figure to $22,000 on the copy and used it to support her claim she had paid the district $22,000 while the bank had cleared it as a check for $2,000. The implication is clear that the check was issued in the amount of $2,000 and raised to $22,000 by alteration after it was cleared and paid by the bank. Cursory examination of the check gives added thrust to the implication.

At that same December 14 meeting Betty Haycraft was told to make out a check for $30,000 to the school district, which she then did in the presence of her attorney and her husband, signing Harold C. Haycraft's name to the check. The auditor and the treasurer then told the defen-

dants that there was still a balance due the school of $44,900. The County Superintendent of Schools told defendants to bring to him the original cancelled checks verifying the amounts claimed to have been paid to the school district. On December 22, 1967, Betty Haycraft reported a burglary at her home and claimed that all the original cancelled checks on the tax collector's account had been stolen.

Copies of all cancelled checks drawn on the tax collector's account for the period during which Harold Haycraft was tax collector, as well as the bank ledger cards and the personal account of Betty Haycraft and Harold Haycraft, were received in evidence. They disclosed that checks totaling $50,175 were drawn on the tax collector's account made payable to cash. Other checks were drawn on the tax collector's account made payable to other than taxing bodies. For example, a check dated April 19, 1965, made payable to Piasa First Federal Savings and Loan Association in the amount of $5,312.36 was deposited to the Haycraft joint savings account. Both parties were present on the occasion. Another check on the collector's account payable to the Old National Bank in Centralia in the amount of $1,564.75 was used to purchase an interest in an oil well in the names of both defendants. Harold Haycraft was present when the check was presented to the Old National Bank of Centralia by his wife and verified it. Another check on the collector's account was used to acquire an interest in a lot at Cherokee Village, Arkansas. Also, the checks to cash were shown to coincide with deposits of similar amounts to the joint personal bank account of defendants and these funds were used for joint purposes of defendants. The total amount of tax monies actually deposited to the collector's account and then withdrawn through checks made payable to cash or to other than taxing districts is $61,903.13.

It is the defendants' position that the State has wholly failed in its proof of defendants' guilt, especially as to Harold Haycraft who argues here that the record is devoid of any evidence or proof that he did any act or possessed the requisite intent necessary to show his guilt of theft or official misconduct. It is his position that every act shown by the evidence to have been committed by the township collector's office was the overt act of his wife and he was shown to have taken no active part or did any affirmative act that would constitute a violation of the criminal statutes upon which the indictments are based.

Defendant Harold Haycraft admitted in his testimony that his intent from the outset was to "hang on" to the tax monies collected for the taxing districts just as long as he could. He stated that he understood the summary settlement sheets and knew the nature of his duties. He knew it was his duty to give receipts for tax collections, deposit them

and then pay them over to the taxing districts. He further acknowledged that he had designated his wife to act as his deputy and authorized her to sign his name to all official documents such as the summary settlement sheets and checks on the collector's account. He never checked to see if she was disbursing monies collected to the taxing districts; never reconciled the bank balances to the summary settlement sheets and never balanced the checkbook. Betty Haycraft testified that there was no major difference between what she had collected and what the summary sheets showed. The defendants' attorney stated that it was not in dispute that there is a shortage of $44,983.45 with respect to the Bethalto School District and that the audit furnished by the certified public accountant is basically correct.

■■ Our review of the record and consideration of the evidence presented to the jury, as summarized above, leads to the conclusion that the verdicts of the jury were fully supported by the evidence and was sufficient to establish the defendants' guilt of all charges contained in the indictments beyond a reasonable doubt and their verdicts of guilty will be affirmed.

No one reading the record could attribute or reconcile defendants' actions with any purpose other than fraud, deception and theft. Certainly it cannot be said that the actions of defendants, whether of omission or commission, were honest mistakes stemming from misunderstanding or lack of competence. It is much more than that. The evidence conclusively shows a commonly contrived and shared scheme to withhold tax funds from the taxing bodies of Fort Russell Township, to which they were properly payable, and to appropriate such funds to their own use and control.

Even though it be granted that defendant Harold Haycraft did not commit any overt act of theft or official misconduct, in the sense of some bodily or physical act on his part, nonetheless this does not serve to exonerate him from the charges. Nor is he liable because he happens to be the husband of Betty Haycraft.

Ch. 38, art. 4, par. 1, Ill. Rev. Stat., defines a "voluntary act" as follows:

"A material element of every offense is a voluntary act, which includes an omission to perform a duty which the law imposes on the offender and which he is physically capable of performing."

■■ Par. 199 of the Revenue Act (Ill. Rev. Stat., ch. 120, par. 680) makes it a mandatory duty of the township tax collector to make a settlement with the county treasurer not later than September 1 of each year. The duty to make a settlement with the county treasurer necessarily includes accounting for and distribution of taxes collected

to the taxing bodies entitled thereto. (See *Moeng v. People*, 138 Ill. 513, 28 N.E. 1073.) Thus, the two cited statutes make it clear that defendant Harold Haycraft need not have committed an overt act to subject himself to criminal liability. He testified that he understood the duties of the township tax collector and his failure to act can render him guilty of official misconduct as would a culpable overt act. But beyond this, we think the evidence shows Harold Haycraft to be more than a mere innocent bystander. His presence at the Old National Bank in Centralia at the time of purchase of the oil interest, his presence when the deposit was made in the Piasa First Federal Savings and Loan Association and his certain knowledge that large sums of money were being deposited in his personal bank account are sufficient to constitute him an active wrongdoer, as distinguished from one whose fault lies in his omission to act.

■■■ Defendants argue that there is no showing of intent upon which to base liability for theft under ch. 38, art. 16, par. 1, Ill. Rev. Stat. The argument is not well taken. Ch. 38, art. 4, par. 4, Ill. Rev. Stat. declares that:

"A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is to accomplish that result or engage in that conduct."

Although intent is a matter of fact and cannot be implied as a matter of law, criminal intent may be shown by circumstantial evidence. (*People v. Perry*, 23 Ill.2d 147, 177 N.E.2d 323; *People v. Weiss*, 367 Ill. 580, 12 N.E.2d 652; *People v. Bonner*, 43 Ill.App.2d 42, 192 N.E.2d 568.) The trier of fact may infer intent from the acts and conduct of the defendant which, with attending circumstances in evidence, reasonably indicates such an intent to the minds of others. (*People v. Soznowski*, 22 Ill.2d 540, 177 N.E.2d 146; *People v. Maffioli*, 406 Ill. 315, 94 N.E.2d 191.) We think the evidence in the case at bar is sufficient to prove the requisite intent of the parties to commit the crime of theft.

■■ Defendants stress the fact that at the time the charges were filed by the (Bethalto) school district their money was in the bank and accordingly no charge of theft of funds of that district would lie. While it is true that the evidence shows there was approximately $17,000 in the bank at the time the charges were filed, this amount was in nowise sufficient to make up the overall deficiency in the settlements and the amount was held in the collector's account without any further designation as to which of the taxing district or districts owned the balance in the account.

The contention of defendant Harold Haycraft that he cannot be

found guilty of official misconduct, Ill. Rev. Stat., ch. 38, art. 33, par. 3, because he was not shown to have done any act is ineffectual, as pointed out above in the discussion of the statute which defines voluntary act to include an omission to perform a duty imposed by law. Ill. Rev. Stat., ch. 38, art. 4, par. 1.

■■ The charges of forgery made against Betty Haycraft are based on two receipts for payments of tax money to the treasurer of the Roxana School District, Armand E. Counsil. One, dated July 7, 1966, in the amount of $4,821.42, and the other, dated June 27, 1967, in the amount of $5,764.70. Betty Haycraft denied that the receipts were in her handwriting, and stated that she did not recall whether she had delivered them to the treasurer's office but admitted that it could be possible. Edna Bell, a longtime employee of the Madison County Treasurer's Office testified that these receipts were brought in or sent in by Betty Haycraft and that the purported signature was that of Armand E. C-o-u-n-c-i-l and they meant that Mr. Council received the money if it was his signature on the receipts. Armand E. C-o-u-n-s-i-l next testified that he was treasurer of the Roxana School District until June 30, 1964. He denied that the signature on the receipts was his, pointed out that his name was spelled incorrectly and denied that he received the disbursements indicated on the receipts and stated he was not in fact the treasurer of the district on those dates. He further stated that on June 27, 1967, the date of one of the receipts, he was in Honolulu, Hawaii.

Against this evidentiary background the applicable statute, Ill. Rev. Stat., ch. 38, art. 17, par. 3, states that a person commits forgery when, with intent to defraud, he knowingly: "(2) Issues or delivers such document knowing it to have been thus made or altered;" The same statute defines "intent to defraud" and "a document apparently capable of defrauding another" with sufficient breadth to encompass the activity of Betty Haycraft as shown here. The jury's verdicts on the forgery indictments rest on a finding that she issued the receipts in question and delivered them to the county treasurer intending thereby to obtain credit on the accounting for taxes by showing a disbursement of tax monies to the treasurer of the Roxana School District and claiming such credit on the summary settlement sheet. We think the jury's findings of guilty under the circumstances presented are fully supported by the evidence.

Defendants next argue that error was committed by the court's giving of instructions offered by the State. The arguments are based primarily upon the contention that there is a total absence of evidence to support the giving of the instructions, particularly as to the defendant Harold

Haycraft. We have examined the instructions and defendants' objections thereto and find the objections to be without merit.

■■ Defendant Betty Haycraft urges that the trial court committed error in refusing to quash the indictments charging her with theft, contending that she was not a "public official" so that the extended limitations provision for prosecution of an offense based upon misconduct in office by a public officer, contained in Ill. Rev. Stat., ch. 38, art. 3, par. 6(b), did not apply to her. She contends her case is governed by the general limitations statute, Ill. Rev. Stat., ch. 38, art. 3, par. 5(b), which provides that a prosecution for the crime of theft must be commenced within three years after the commission of the offense. To dispose of this contention it is only necessary that we point to Ill. Rev. Stat., ch. 38, art. 3, par. 8, which provides: "When an offense is based on a series of acts performed at different times, the period of limitation prescribed by this Article starts at the time when the last such act is committed." The evidence in this case brings it squarely within the operation of this statute and accordingly the motion to quash the indictment was properly denied.

The defendants have raised many other points which they contend were error, but we will not needlessly prolong this opinion by dealing with them in detail. It is sufficient to say that we have examined these points and find them to be either without merit or of a harmless and nonprejudicial nature. In our opinion the evidence of guilt of both defendants is firmly established by sufficient and proper evidence and that the trial, which extended over a period of thirteen days, with thirty-nine witnesses and hundreds of exhibits, was a fair trial and the verdicts of the jury and the judgment of the court will accordingly be affirmed.

Judgment affirmed.

EBERSPACHER, P. J., and CREBS, J., concur.