THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES PASCARELLA, Defendant-Appellant.

Third District   No. 80-63

Opinion filed January 7, 1981.

Sam Adam, of Chicago, and August J. Santoro, of Frankfort, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The defendant, James Pascarella, appeals from a conviction of conspiracy to commit theft. (Ill. Rev. Stat. 1977, ch. 38, pars. 8—2(a) and 16—1.) He was tried by the court and upon his conviction was sentenced to two years' probation, with the first 90 days to be served under a work-release program.

In March of 1977, in Illinois, defendant met with William Cowles, known by defendant for over 18 years. The defendant told Cowles that he needed money and attempted to enlist the aid of Cowles in disposing of stolen cars. Cowles was a police informant. Subsequently the defendant moved to Colorado, and further communications between him and persons in Illinois were effected by telephone. Defendant told Cowles to contact a John Conely to arrange for the delivery of the cars. (Conely was indicted as a co-conspirator.) When the defendant telephoned Cowles on May 25, 1977, Cowles introduced the defendant to Marty Nowak, an undercover police officer operating under an assumed name. Cowles regularly reported the contents of his conversations with defendant to Officer Nowak. On May 27, 1977, pursuant to a court order, Officer Nowak tape-recorded a conversation he had with defendant concerning the defendant's intended delivery of stolen cars to Officer Nowak. Defendant and Officer Nowak again spoke about these matters in June. Nowak then contacted John Conely, who told Nowak that he would be able to deliver stolen luxury automobiles to him for a price of $300 each. When telephoned by Nowak, Conely said that he had already been contacted by a "mutual friend" and was ready to do business.

On June 22, 1977, Nowak telephoned the defendant in Colorado and complained that Conely had not delivered any automobiles. The defendant expressed surprise, stating that Conely had been in the business a long time. Defendant then said that he would look for another source. On June 28, Officer Nowak telephoned Conely, who said he would deliver two cars that evening. That evening Conely delivered one car, for which Officer Nowak gave him $400. The next day, Officer Nowak telephoned

the defendant. They arranged for defendant to be paid $50 per vehicle, with payment to be made by means of a check payable to Conely's daughter in the amount of $500, whenever the accrued "commission" reached that amount. Other deliveries of cars followed. Pursuant to a court order of July 25, 1977, Officer Nowak tape-recorded his conversation with defendant on July 27, 1977. At that time, Nowak made specific arrangements for forwarding payment to defendant by way of his daughter. Nowak and defendant also discussed the quality of Conely's work and the possibility of expanding the operation. Subsequently, a bank draft in the amount of $500 was mailed to the defendant's daughter in Colorado.

The defendant contends on appeal that the court erred in failing to suppress the tapes of the telephone conversations between the defendant and Officer Nowak. He argues that the Illinois court exceeded its authority in issuing an eavesdrop order authorizing the tape-recording of the voice of a citizen of Colorado who was present in Colorado during the relevant conversations. Thus, argues the defendant, he was deprived of his constitutional and statutory right to privacy.

It is clear that the incriminating speech made to a police agent is not required to be suppressed as in violation of defendant's constitutional rights. The agent may repeat the statement to police officers, may tape-record it, or may electronically transmit it, without thereby violating the speaker's privacy rights. *United States v. White* (1971), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122; *Hoffa v. United States* (1966), 385 U.S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408; *Lopez v. United States* (1963), 373 U.S. 427, 10 L. Ed. 2d 462, 83 S. Ct. 1381.

While the field of interstate telephone communication is regulated by the Federal Government, Congress has chosen not to preempt the State's authority to intercept messages where one party to a conversation has given the State his consent to intercept the conversation. 18 U.S.C. §2511(2)(c) (1976) excepts such conversations from the eavesdrop protection afforded by 18 U.S.C. §2510 *et seq.* (1976). Under section 2511(2)(c) (1976):

> "It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

Illinois has established a more restrictive statutory scheme, whereby an order authorizing or approving the use of an eavesdropping device by an investigating law enforcement officer or agency must be granted by a judge, upon application of the State's Attorney, in conformity with certain

statutory requirements. (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1 *et seq.*) It is undisputed that the statutory requirements were complied with in this case.

It is argued by the defendant that, because he was in Colorado at the time he engaged in the intercepted conversations, the Colorado wiretapping and eavesdropping statute (Colo. Rev. Stat. 1973, §16—15—101 *et seq.*) should have been complied with. He argues further that the Colorado statute is more protective of defendant's privacy interests because the Colorado statute is more stringent in its control over eavesdropping by law enforcement officials than is the relevant Illinois statute. The latter contention is incorrect. The Colorado Supreme Court, sitting *en banc*, held that the prohibitory statutes on wiretapping and eavesdropping (Colo. Rev. Stat. 1973, §§18—9—303 and 18—9—304) do not prohibit or make unlawful the recording of a telephone conversation where one party to the conversation agrees to the recording. Therefore, the nonconsenting party to such a conversation may not invoke Colo. Rev. Stat. 1973, §16—15—102(10), which states:

> "Any aggrieved person in any trial * * * in or before any court * * * of the state of Colorado * * * may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that: The communication was unlawfully intercepted; * * *."

"[W]here one party to the conversation agrees to the recording, there is no 'unlawful interception' within the meaning of Section 16—15—102(10). That section is, therefore, not applicable, and the evidence should not [be] suppressed." (*People v. Morton* (1975), 189 Colo. 198, 539 P.2d 1255, *cert. denied* (1976), 423 U.S. 1053, 46 L. Ed. 2d 642, 96 S. Ct. 783.) It is, therefore, clear that Colorado imposes no statutory controls over consensual eavesdropping.

In the same case, the Colorado Supreme Court, citing *United States v. White* (1969), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122, found no constitutional prohibition against the recording of a conversation to which one party consents. Therefore, the only legal controls over the consensual eavesdropping found in this case were those imposed by the Illinois statute. The Illinois law was complied with, and defendant has no sound basis to claim a legally protected expectation of privacy beyond that provided by the Illinois statute. We need not and do not reach the question of whether the eavesdrop would have been legal were Colorado law more stringent in its control of consensual eavesdropping than is Illinois law.

■■ An Illinois court clearly has jurisdiction to authorize the recording of a telephone conversation when, as here, the conversation is knowingly

directed to a person in Illinois and that person consents to the recording, even though the other party to the conversation is physically located in another State. The situs of the conversation was, and was intended by both parties to be, Illinois. The court had jurisdiction to decide whether section 108A—1 *et seq.* of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 108A—1 *et seq.*) had been complied with, and in finding compliance with the statute, to authorize the recording of the conversation.

The defendant next contends that the Federal courts had exclusive jurisdiction to try this cause, citing United States Constitution, article III, section 2, clause 1, which reads:

> "The judicial Power shall extend * * * to Controversies * * * between a State and Citizens of another State."

Therefore, argues the defendant, the Circuit Court of Will County, Illinois lacked jurisdiction to try this case. It is not clear that defendant is a citizen of Colorado. The evidence supports a conclusion that he was merely temporarily absent from Illinois (see *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 85 L. Ed. 278, 61 S. Ct. 339) and intended to return to this State. Assuming, *arguendo*, that defendant is a Colorado citizen, the courts of Illinois are not thereby deprived of jurisdiction over him. Article III, section 2, clause 1, gave the United States Supreme Court original, but not exclusive, jurisdiction of cases between a State and citizens of another State. (*Plaquemines Tropical Fruit Co. v. Henderson* (1898), 170 U.S. 511, 42 L. Ed. 1126, 18 S. Ct. 685.) 28 U.S.C. §1251(b) provides:

> "The Supreme Court shall have original but not exclusive jurisdiction of
>
> * * *
>
> (3) All actions or proceedings by a State against citizens of another State or against aliens."

Thus, the State courts have concurrent jurisdiction of cases between a State and a citizen of another State. See also *Ohio v. Wyandotte Chemicals Corp.* (1971), 401 U.S. 493, 28 L. Ed. 2d 256, 91 S. Ct. 1005.

■■■ The defendant argues that the United States Constitution requires that "[t]he Trial of all Crimes * * * shall be held in the State where the said Crimes have been committed" (art. III, §2, cl. 3), and "[i]n all criminal prosecutions, the accused shall enjoy the right to speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed * * *." (Amend. VI.) The defendant maintains that his trial in Illinois deprived him of his constitutional right to be tried in the State where the crime was committed, because he was physically present in Colorado during the commission of the offense. The right to trial in the State where the crime was committed applies to trials

by the Federal courts, and has not been required of the States by the fourteenth amendment. (See *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792.) Furthermore, we find no conflict between the notions of fairness embodied in this right and the bringing to trial of defendant Pascarella before the circuit court of Illinois.

State criminal jurisdiction is set forth in section 1—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 1—5), which states:

"(a) A person is subject to prosecution in this State for an offense which he commits, while either within or outside the State, by his own conduct or that of another for which he is legally accountable, if:

\* \* \*

(3) The conduct outside the State constitutes a conspiracy to commit an offense within the State, and an act in furtherance of the conspiracy occurs in the State."

This statute is consistent with the notions of fundamental fairness embodied in the fourteenth amendment. It is long established that every act in furtherance of a conspiracy is regarded, in law, as a renewal or continuance of the unlawful agreement. The conspiracy is renewed as to all conspirators at the place where the overt act is done. *People v. Perry* (1961), 23 Ill. 2d 147, 155-56, 177 N.E.2d 323; *People v. Miller* (1933), 352 Ill. 537, 539-40, 186 N.E. 180.

■■ The defendant next argues that he was not proved guilty beyond a reasonable doubt because venue, an element of every criminal offense (see *People v. Goulet* (1977), 52 Ill. App. 3d 609, 610, 367 N.E.2d 1045) was not established. Venue in criminal cases is governed by section 1—6 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 1—6), which states, in relevant part:

"(m) Inchoate Offenses.

A person who commits an inchoate offense may be tried in any county in which any act which is an element of the offense, including the agreement in conspiracy, is committed."

The defendant was indicted and convicted for having conspired with John Conely to commit theft. Count II of the indictment charged John Conely with delivering stolen vehicles in furtherance of the conspiracy. It was proved at trial that John Conely, an indicted co-conspirator, delivered motor vehicles to police agents in Will County, Illinois, pursuant to a conspiracy entered into between John Conely and the defendant. These acts of defendant's co-conspirator established the jurisdiction of the State of Illinois to try this case and also established venue in the County of Will. (*People v. Miller* (1933), 352 Ill. 537, 186 N.E. 180.) We find no insufficiency in the indictment. The defendant was proved guilty beyond a reasonable doubt.

For the reasons stated, the judgment of the Circuit Court of Will County is affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.