THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARTRIC BROWN, Defendant-Appellant.

Third District   No. 81-755

Opinion filed July 20, 1982.

ALLOY, J., specially concurring.

Robert Agostinelli and Stephen H. Omolecki, both of State Appellate
Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Gerry
R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel),
for the People.

JUSTICE HEIPLE delivered the opinion of the court:
On December 10, 1980, Artric Brown, the defendant, was indicted
for conspiracy to deliver a controlled substance (Ill. Rev. Stat. 1979, ch.

56½, par. 1401(a); ch. 38, par. 8—2(a)), and calculated criminal drug conspiracy (Ill. Rev. Stat. 1979, ch. 56½, par. 1405(a)). A Rock Island jury returned convictions on both offenses. Mr. Brown was sentenced to six years on the calculated drug conspiracy felony. No sentence was levied on the conspiracy charge. Defendant appeals.

Two issues are before us. They are: whether the People proved the calculated drug conspiracy occurred in Rock Island County; and, whether the trial judge erred in remitting defendant's bail bond deposit as payment for services of appointed counsel.

On September 23, 1980, William Haley, a State of Illinois undercover police agent, Mary Woolery, an undercover police officer, and their informant, met David Madden in his Rock Island apartment. The police officers wanted to make a controlled purchase of heroin. Madden took them to the Silver Streak saloon in Rock Island. He was to act as an intermediary between Haley and the heroin source. The seller, someone named Frank, was to meet Madden at this bar and Madden would then introduce him to Haley. Frank did not surface. Joe Cooper did. Interestingly, Joe Cooper was also known as Frank Nitty. He told Madden and Haley that Frank had been arrested. Undashed, Haley still wanted to buy heroin. Cooper said he could oblige him, but they would have to travel to Chicago to complete the transaction. Everyone agreed to this. Cooper telephoned his supplier, someone named Chuck, and the deal was struck. Cooper told Haley that the packaged heroin would be waiting for them in Chicago. Cooper, Haley, Woolery, the informant and Madden left Rock Island by car for Chicago. Later, they arrived at a Walton Avenue address in that city. Allegedly, Cooper conversed with Chuck. He was told to return at 5 p.m. to buy the contraband. While waiting, Haley contacted nearby police surveillance units. At 5 p.m. he went to the Walton Avenue flat. He was informed by Madden that Chuck had been stopped and detained by the police on an unrelated matter. Since he was still at the police station he could not complete the transaction. Madden also stated that Cooper was negotiating a purchase of heroin from Chuck's cousin, the defendant. Eventually, Haley met the defendant and agreed to purchase several bags of heroin from him for $1,800. The sale was completed in the vicinity of a Cicero Avenue tavern in Chicago around 6:15 p.m. Cooper, Madden, Haley, and the informant shortly thereafter returned to Rock Island by car. Agent Woolery was left at a Chicago bus terminal. Cooper, Madden, and the defendant were arrested later that evening.

Defendant says that if any calculated criminal drug conspiracy occurred, it did so in Cook County, not Rock Island County. And, since defendant had no connection with any events which took place in Rock Island County, the circuit court was without jurisdiction to try him there.

The offense of calculated criminal drug conspiracy is a statutory offense. A person commits it when:

"* * * (1) he violates any of the provisions of subsections (a) or (b) of Section 401 (the manufacture or delivery of certain controlled substances, including heroin); or subsection (a) of Section 402 (possession of certain controlled substances, including heroin); and

(2) such violation is part of a *conspiracy undertaken or carried on with two or more other persons*; and

(3) he obtains anything of value greater than $500 from, or organizes, directs or finances such violation or conspiracy. * * *" (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 56½, par. 1405(b)(1) through (3).)

Thus, a calculated drug conspiracy requires a minimum of three persons. This is one more person than is required in a simple conspiracy.

The calculated criminal drug conspiracy here involved the requisite three persons: namely, Cooper, Madden, and the defendant. This conspiracy began in Rock Island where Cooper, Madden and Haley met for the purpose of transacting a heroin sale. When the defendant agreed to deliver heroin in Chicago, he entered the conspiracy which began in Rock Island by Cooper and Madden. It is undisputed that Mr. Brown obtained the drugs which were purchased by the police. This was an act in furtherance of the original agreement, conceived in Rock Island, which was to go to Chicago and buy heroin. It was merely an extension or prong of that illegal scheme. *People v. Perry* (1961), 23 Ill. 2d 147, 155, *cert. denied* (1962), 369 U.S. 868, 8 L. Ed. 2d 86, 82 S. Ct. 1035.

■■ A calculated criminal drug conspiracy is an inchoate offense. It may be tried in any county where an act, which is an element of the offense, is committed. (Ill. Rev. Stat. 1979, ch. 38, par. 1—6(m).) The agreement to purchase heroin was devised in Rock Island by Cooper and Madden even though the ultimate purchase transpired in Chicago. They agreed to break the law by buying and thereby supplying Haley with heroin. The situs of the sale was agreed to be in Chicago. Such agreements were sufficient to lay venue in Rock Island County. The fact Mr. Brown was unaware of such a plot and had never set foot in Rock Island County is immaterial. (*People v. Miller* (1933), 352 Ill. 537, 539-40.) Legally, Brown was vicariously liable for all acts done by any other parties to a conspiracy already composed, either before or after his entrance into the conspiracy, as long as such acts were in furtherance of the conspiracy. (*People v. Glassberg* (1927), 326 Ill. 379, 388-89.) In law, Mr. Brown was a party to the original agreement of Madden and Cooper to traffic in heroin. The fact the heroin was purchased from defendant instead of Chuck is of no consequence, since when defendant obtained the drugs he was acting in

furtherance of the original plan and was implementing as well as bringing to fruition its illicit design. (See *People v. Pascarella* (1981), 92 Ill. App. 3d 413, 417-18.) Thus, venue in Rock Island County, the place where an act in furtherance of this offense occurred, was proper. That this rule of law is anomalous is true. It is, however, settled law.

■■ Finally, defendant maintains reimbursement to the county for the cost of appointed counsel from his bail bond was wrong. Citing *People v. Cook* (1980), 81 Ill. 2d 176, Mr. Brown says the statute (Ill. Rev. Stat. 1979, ch. 38, par. 110—7(g)) authorizing such remittance is unconstitutional. The People reply that defendant was not a pauper and thus the trial court had inherent equitable authority to order such restitution.

The parties' disagreement exists because the record does not contain a finding by the trial judge that defendant was or was not indigent. We remand the cause for a hearing on that issue. If defendant was indigent, the mandate of *Cook* applies: if he was not a pauper then disbursement from his bail bond may be ordered in the discretion of the trial court. *People v. Wiley* (1980), 85 Ill. App. 3d 749, 750.

For the reasons stated, the judgment of conviction and sentence of the Rock Island Circuit Court for criminal calculated drug conspiracy is affirmed. That portion of the court's order relating to reimbursement for costs of counsel is vacated. This cause is remanded for a hearing consistent with the views expressed herein regarding that matter.

Judgment affirmed. Reimbursement order vacated. Cause remanded.

STOUDER, J., concurs.

JUSTICE ALLOY, specially concurring:

I concur in the result reached by the majority that venue properly lay in Rock Island County for the section 405(b) conspiracy, but whereas the majority finds that just Cooper and Madden are necessary to achieve that result, I believe the presence of a third conspirator, Chuck, is also necessary.

As the majority correctly indicates, a calculated criminal drug conspiracy is somewhat of a *rare avis* because it requires agreement among at least three participants (Ill. Rev. Stat. 1979, ch. 56½, par. 1405(b)(2)), while an ordinary conspiracy takes just two conspirators to result in criminal liability (Ill. Rev. Stat. 1979, ch. 38, par. 8—2). Thus, it is possible to have an agreement between two persons which results in no criminal liability under section 405(b) until another agreement by a third conspirator occurs. Placed in perspective of the present case, although Cooper and Madden agreed in Rock Island to sell heroin to Haley, a section 405(b)

conspiracy was legally impossible because the minimum number of conspirators was then lacking. The majority, however, would interpret the venue section of the Criminal Code of 1961 to include the situs of this first, incipient agreement as a possible trial situs, even though that agreement did not itself result in criminal liability. For this reason I do not find the case law cited by the majority to be directly persuasive, because in every instance the offense involved was ordinary conspiracy where criminal liability results at the moment an agreement is reached between at least two participants. The majority's application of the vicarious liability rule to an agreement not itself resulting in criminal liability only expands the already bloated bounds of conspiracy law which have made the offense the " '* * * darling of the * * * prosecutor's nursery.' " (W. LaFave & A. Scott, Jr., Criminal Law sec. 61, at 455 (1972), quoting from *Harrison v. United States* (2d Cir. 1925), 7 F.2d 259).) The accused's right to be tried by a jury in the county where the offense allegedly took place is an important constitutional guarantee, for it safeguards against unfairness and hardship caused when he is prosecuted in a remote place and should not be restricted without express legislative authority.

I also submit that today's result is inconsistent with the result that would occur in an analogous situation involving ordinary conspiracy. The following example illustrates. A is in Rock Island and decides he wants to sell some heroin. He has none, but he knows that B, who lives in Chicago, can get some. A goes to Chicago and contacts B who agrees to sell heroin to A. Later they meet at B's Chicago apartment and conclude the transaction. They are then arrested. Under the majority's holding, B could be tried in Rock Island County because the incipient or intended conspiracy, which at that time did not constitute an offense since only one conspirator then existed, began with A in Rock Island. Under established conspiracy law, however, venue lies exclusively in Cook County because all three conspirators were in Chicago when the agreement was made and all acts done in furtherance thereof also occurred there.

Nevertheless, venue for the section 405(b) charge did lie in Rock Island County because the defendant joined a pre-existing conspiracy consisting of Cooper, Madden, and Chuck. In his brief, the defendant concedes that a possible venue for this conspiracy rests in Rock Island County because Cooper and Madden were located in Rock Island County when they agreed over the telephone to buy heroin from Chuck. He argues, however, that once Chuck was arrested, Chuck withdrew from that conspiracy leaving only Cooper and Madden; with only two conspirators, a section 405(b) conspiracy was legally impossible, thus terminating the conspiracy which began in Rock Island. The defendant concludes that although a second section 405(b) conspiracy arose when he agreed to sell

Cooper and Madden heroin, the agreement and all acts done in further-ance thereof occurred in Chicago; thus, venue lay exclusively in Cook County. The defendant's argument fails because he incorrectly equates Chuck's arrest with his withdrawal. In order to withdraw from a conspiracy, a conspirator must take some affirmative action, either con-fessing to police or informing his co-conspirators that he has withdrawn. (*United States v. Borelli* (2d Cir. 1964), 336 F.2d 376, *cert. denied* in *Cinquegrano v. United States* (1964), 379 U.S. 960, 13 L. Ed. 2d 555, 85 S. Ct. 647.) In applying this definition of withdrawal, courts have con-sistently held that, while a conspirator's arrest accompanied by his confession to the conspiracy may constitute a withdrawal, a conspirator's arrest or incarceration alone is not a disavowal of his participation and will not work his withdrawal from the conspiracy as a matter of law. (*United States v. Panebianco* (2d Cir. 1976), 543 F.2d 447, *cert. denied* in *Anatala v. United States* (1977), 429 U.S. 1103, 51 L. Ed. 2d 553, 97 S. Ct. 1128; *United States v. Harris* (7th Cir. 1976), 542 F.2d 1283, *cert. denied* in *Clay v. United States* (1977), 430 U.S. 934, 51 L. Ed. 2d 779, 97 S. Ct. 1558; *United States v. Borelli.*) This is especially true where, as here, the incarceration was for a matter unrelated to the offense charged in the conspiracy indictment. Thus, because Chuck's arrest did not end his participation in the calculated criminal drug conspiracy, which the defendant concedes began in Rock Island, and because this conspiracy was not otherwise terminated before the defendant entered, the defend-ant entered into a pre-existing calculated criminal drug conspiracy and was vicariously liable for the previous agreement, made partially in Rock Island, to deliver heroin. For this reason the circuit court of that county was authorized under section 1—6(m) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 1—6(m)), to try the defendant for the charge of calculated criminal drug conspiracy despite his never having set foot in Rock Island County. *People v. Pascarella* (1981), 92 Ill. App. 3d 413, 415 N.E.2d 1285.