113 Ill. App.3d 639 (1983)
447 N.E.2d 862
In re COOK COUNTY GRAND JURY.  (The People of the State of Illinois, Petitioner-Appellee,
v.
Constantine August Taddeo et al., Respondents-Appellants.)
Nos. 82-1178, 82-1179 cons.
Illinois Appellate Court  First District (1st Division).
Opinion filed March 21, 1983.
*640 *641 Santo J. Volpe and Allan A. Ackerman, of Ackerman and Egan, Ltd., both of Chicago, for appellants.
Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Gregory G. Thiess, and Lawrence R. Stasica, Assistant State's Attorneys, of counsel), for the People.
Affirmed in part and reversed in part and remanded.
JUSTICE O'CONNOR delivered the opinion of the court:
This is an appeal from an order of the circuit court of Cook County holding Constantine August Taddeo and Joseph Bronge, two grand jury witnesses (hereinafter referred to as defendants), in contempt of court for refusing to testify before the grand jury. For the reasons stated below, we affirm in part, reverse in part and remand for further proceedings.
Defendants were called before the Extended March 1982 Cook County Grand Jury investigating the disappearance of Salvatore Pullia. Both asserted their fifth amendment privilege against self-incrimination and refused to answer the questions asked of them. On April 30, 1982, the State requested a grant of immunity (Ill. Rev. Stat. 1981, ch. 38, par. 106-1) for each witness. Both were granted immunity pursuant to court order.
Appearing before the grand jury with grants of immunity, both again refused to answer the questions put to them. Instead, they objected, stating:
"I respectfully refuse to answer the questions because your inquiry is based upon illegal electronic surveillance obtained by violation of Title 18 of the United States Code, Section 2510 and the following sections and in particular Section 2515 and hereby make a claim according to Title 18, United States Code, Section 3504."
On May 12, 1982, the State presented petitions and affidavits to the circuit court for a rule to show cause for each defendant. They replied both in writing and at the hearing for contempt that they *642 were not in violation of the circuit court's immunity order because the grand jury questions were based on illegal electronic surveillance. (18 U.S.C. sec. 2510 et seq.; sec. 3504 (1976).) The State argued their contentions were "bare claims" not sufficient to place a burden on the State to disprove the contentions of illegal surveillance. The assistant State's Attorney also stated:
"On the other hand, your Honor, I can say under oath as an officer of the Court, if need to be sworn in, the State has not applied for nor have they used any eavesdropping devices to obtain any evidence which is the basis for any of the questions for either [defendant].
The State has not been provided with any information from the Federal Government that they have obtained by electronic eavesdropping or wiretapping which is the basis for any of our questioning of [the defendants]."
During the hearing, counsel for defendants acknowledged that the claims were not substantiated, but that they could be verified.
The circuit court found the State's in-court oral statement adequately met defendants' claim of illegal electronic surveillance. It then held defendants to be in contempt of court unless they purged themselves by testifying before the grand jury. Upon the representations of counsel that defendants would stand on their claims, the circuit court found them in contempt of court.
An oral motion to vacate the orders on immunity and contempt, the petitions for rule to show cause order and to quash the grand jury subpoenas was denied. Enforcement of the order of contempt was stayed pending this appeal.
Two issues are raised by defendants: (1) whether the statutory scheme for granting immunity in Illinois to "material witnesses" is constitutional; and (2) whether defendants were properly held in contempt of court where the State made an oral, in-court denial of the witnesses' claims of illegal electronic surveillance.
Defendants argue that section 106-1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 106-1), granting immunity to a "material witness," is unconstitutional, violating the fifth amendment of the United States Constitution and article I, sections 2 and 10 of the Illinois Constitution. It is argued that the granting of immunity to a "material witness" under this statute is not coextensive with the privilege against self-incrimination. (See Kastigar v. United States (1972), 406 U.S. 441, 32 L.Ed.2d 212, 92 S.Ct. 1653.) Defendants' position is that the constitutional privilege available to a "person" is not the same as the statutory grant of immunity *643 to a "material witness."
The immunity statute, section 106-1, provides:
"In any investigation before a Grand Jury, or trial in any court, the court on motion of the State may order that any material witness be released from all liability to be prosecuted or punished on account of any testimony or other evidence he may be required to produce."
The effect of this grant of immunity is stated in section 106-2 (Ill. Rev. Stat. 1981, ch. 38, par. 106-2):
"Such order of immunity shall forever be a bar to prosecution against the witness for any offense shown in whole or in part by such testimony or other evidence * * *."
In Kastigar, the Supreme Court determined that the Federal immunity statute (18 U.S.C. secs. 6001 through 6005 (1972)) was coextensive with the fifth amendment, stating:
"* * * While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. * * *." 406 U.S. 441, 453, 32 L.Ed.2d 212, 222, 92 S.Ct. 1653, 1661.
It is clear that a grant of transactional immunity is provided for by the language of sections 106-1 and 106-2. (People ex rel. Cruz v. Fitzgerald (1977), 66 Ill.2d 546, 363 N.E.2d 835.) A grant of immunity under these statutes, then, results in complete protection against prosecution for the witness. The Illinois immunity statute is, therefore, coextensive with both the United States and Illinois constitutions.
 1 The use of the term "material witness" does not, as defendants appear to argue, disturb the scope of the immunity granted under the statute. Anyone receiving immunity pursuant to this statute will have transactional immunity, protection broader than that required by the fifth amendment. (Kastigar v. United States.) Also, there is no violation of due process and equal protection (see Ill. Const. 1970, art. I, sec. 2) in distinguishing between a "material" or "immaterial" witness. The former has the protection of the statutory immunity, while the latter is protected by the exercise of the fifth amendment privilege against self-incrimination.
Defendants further argue that section 106-1 is vague and constitutionally defective because it does not define what constitutes a "material witness" and how such a determination is made. We disagree.
*644 A plain reading of section 106-1 reveals that it is the court making the order of immunity that determines a witness is "material." (Cf. In re Adams (1976), 64 Ill.2d 269, 356 N.E.2d 55; In re Grothe (1965), 59 Ill. App.2d 1, 208 N.E.2d 581; Ill. Rev. Stat. 1981, ch. 38, par. 156-2 ("material witness" in the Uniform Act to secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings).) In discussing the production of documents subject to a grand jury's subpoena duces tecum, our supreme court in People v. Dorr (1970), 47 Ill.2d 458, 265 N.E.2d 601, cert. denied (1971), 402 U.S. 929, 28 L.Ed.2d 863, 91 S.Ct. 1527, quoted a pertinent statement made in People v. Allen (1952), 410 Ill. 508, 517, 103 N.E.2d 92, cert. denied (1952), 344 U.S. 815, 97 L.Ed. 635, 73 S.Ct. 9 (47 Ill.2d 458, 462-63):
"`In litigated cases, materiality can be fixed with a relatively high degree of precision by reference to the issues formulated in the pleadings. No standard of comparable certainty exists with respect to an inquiry by a grand jury. The very purpose of such an inquiry is to uncover matters previously unknown to the investigating agency. It is not necessary that a "cause" or "specific charge" be pending before the grand jury as a condition to its right to command the production of documents. (Hale v. Henkel, 201 U.S. 43; Wilson v. United States, 221 U.S. 361.) Such a requirement, as pointed out in Hale v. Henkel, would sharply curtail the historic function of the grand jury. "[R]elevancy and adequacy or excess in the breadth of the subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186.
Unless the effectiveness of the grand jury in the administration of criminal law is to be drastically impaired, the most that can be required as a standard of materiality is as precise a statement of a subject under investigation as the circumstances permit.'"
 2 In the case at bar, the trial court in camera examined the grand jury foreman before making a determination that defendants were indeed "material witnesses." In response to this examination, the foreman stated defendants were material to the grand jury investigation and that they were necessary for the conduct of the proceedings. Without delving into the exact nature of the grand jury's investigation, the trial court was thus able to determine the importance of these witnesses to that investigation. We think the procedure used by the trial court was within the proper exercise of its duties.
*645 Defendants next argue that they were improperly found in contempt of court after they asserted that questions were asked which were the result of illegal electronic surveillance. The refusals by defendants to answer the questions were, as quoted above, based on the protection afforded by Federal statute (i.e., 18 U.S.C. sec. 2510 et seq.; sec. 3504 (1976)). In their brief, defendants argue that these protections can also be found in Illinois law which creates statutory restrictions on eavesdropping. Ill. Rev. Stat. 1981, ch. 38, par. 14-1 et seq.; ch. 38, par. 108A-1 et seq.; see also Ill. Const. 1970, art. I, sec. 6.
Section 2515 implements an exclusionary rule under the strict limits placed on the use of electronic surveillance by title III of the Omnibus Crime Control and Safe Streets Act (18 U.S.C. sec. 2510 et seq. (1976)). (See Cruz v. Alexander (2d Cir.1982), 669 F.2d 872, 874, cert. denied (1982), 459 U.S. ___, 74 L.Ed.2d 89, 103 S.Ct. 99.) Section 2515 bars from Federal and State courts conversations intercepted by unauthorized wiretapping and evidence derived from such wiretapping. This proscription includes grand jury proceedings. Section 3504 provides a mechanism through which a claim by an aggrieved party that wiretap evidence is being used against him must be affirmed or denied by the government. (18 U.S.C. sec. 3504(a)(1) (1976).) This section was created because it was recognized that while victims of illegal wiretapping may have grounds to suspect such activity, it would be difficult to prove. (669 F.2d 872, 874.) Section 3504, by its terms, applies only to Federal proceedings. 669 F.2d 872, 875; see Vannier v. Superior Court (1982), 32 Cal.3d 163, 185 Cal. Rptr. 427, 650 P.2d 302; H. Rep. No. 1549, 91st Cong., 2d Sess. 51, reprinted in [1970] U.S. Code Cong. & Ad. News 4007, 4027.
Although defendants principally rely on section 3504 to establish their claims of illegal surveillance, it is clear that Illinois courts are not required to follow the Federal criminal procedure to determine whether evidence has been unlawfully obtained. This does not mean, however, that defendants may not assert these claims in a grand jury proceeding.
Since Gelbard v. United States (1972), 408 U.S. 41, 33 L.Ed.2d 179, 92 S.Ct. 2357, it has been well established that a grand jury witness may refuse to answer questions based on illegal electronic surveillance. The Supreme Court observed that section 2515 "serves not only to protect the privacy of communications, but also to ensure that the courts do not become partners to illegal conduct: the evidentiary prohibition was enacted also `to protect the integrity of court and administrative proceedings.'" (408 U.S. 41, 51, 33 L.Ed.2d 179, 188-89, *646 92 S.Ct. 2357, 2362-63.) The court also noted that a motion to suppress, as a method of enforcing the section 2515 prohibition, "must be made in accordance with the restrictions upon forums, procedures, and grounds specified in sec. 2518(10)(a)." (408 U.S. 41, 61, 33 L.Ed.2d 179, 194, 92 S.Ct. 2357, 2367.) Section 2518(10)(a) provides that an aggrieved person may move to suppress unlawfully intercepted communication in any trial, hearing or proceeding of any court, Federal or State. 18 U.S.C. sec. 2518(10)(a) (1976).
Illinois has long regulated wiretapping and electronic eavesdropping through statutory schemes. (Ill. Ann. Stat., ch. 38, par. 14-1 et seq., Committee Comments, at 606 (Smith-Hurd 1979).) Article 108A of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, par. 108A-1 et seq.) entitled "Judicial Supervision of the Use of Eavesdropping Devices" has been modeled after title III of the Federal Omnibus Crime Control and Safe Streets Act. (People v. Satek (1979), 78 Ill. App.3d 543, 396 N.E.2d 1133, appeal denied (1980), 79 Ill.2d 628; People v. Monoson (1979), 75 Ill. App.3d 1, 393 N.E.2d 1239.) The fundamental purpose of these eavesdropping statutes is to prohibit unauthorized eavesdropping and the use of evidence gained by such eavesdropping. (People v. Gervasi (1980), 90 Ill. App.3d 1117, 414 N.E.2d 91, aff'd in part, rev'd in part (1982), 89 Ill.2d 522, 434 N.E.2d 1112.) These statutes are considered to be broader in scope than the Federal statutes. People v. Maslowsky (1966), 34 Ill.2d 456, 464, 216 N.E.2d 669; People v. Satek (1979), 78 Ill. App.3d 543, 550.
Section 14-5 and section 108A-9 similarly reflect this purpose. Section 14-5 provides that "[a]ny evidence obtained in violation of this Article is not admissible in any civil or criminal trial, or any administrative or legislative inquiry or proceeding, nor in any grand jury proceedings; * * *." (Ill. Rev. Stat. 1981, ch. 38, par. 14-5.) Section 108A-9(a) states "[a]ny aggrieved person in any judicial or administrative proceeding may move to suppress the contents of any recorded conversation or evidence derived therefrom * * *." Ill. Rev. Stat. 1981, ch. 38, par. 108A-9(a).
 3 We conclude the Illinois statutory scheme provides for a grand jury witness to challenge evidence allegedly obtained through illegal electronic surveillance. To do otherwise would be to emasculate and subvert the clear language of the eavesdropping statutes.
The question then becomes one of procedure: how a claim of illegal electronic surveillance is to be properly raised by a grand jury witness in Illinois.
Section 108A-9(b) states that a motion to suppress "shall be made before the proceeding unless there was no previous opportunity *647 for such motion." (Ill. Rev. Stat. 1981, ch. 38, par. 108A-9(b).) In People v. Maslowsky, six individuals were served with subpoenas duces tecum directing them to appear before a grand jury. They successfully moved to suppress tape recordings made in violation of the eavesdropping statutes (Ill. Rev. Stat. 1963, ch. 38, par. 14-1 et seq.; ch. 38, par. 108A-1 et seq., was not in existence at the time) and to quash the subpoenas.
Often, as occurred in this case, a grand jury witness will not have knowledge beforehand of the questions to be asked by a grand jury. Thus, it would be impossible to present a motion to suppress evidence resulting from illegal electronic surveillance prior to appearing before the grand jury. In such an instance, it would be entirely proper to assert the right not to answer questions based upon illegal surveillance. (Gelbard v. United States; 18 U.S.C. secs. 2515, 2518(10)(a) (1976).) Such an assertion would be consistent with the intent of the Illinois eavesdropping statutes.
At this stage of the proceedings, however, to require a motion to suppress, with the attendant reciprocal pleadings and hearing, would impede the progress of the grand jury investigation. Thus, a balance must be struck between the witness' statutory right not to answer questions based upon illegal electronic surveillance and the interest in unhindered progress of the grand jury's investigative function. (In re Grand Jury Proceedings (D.C. Cir.1979), 613 F.2d 1171; In re DeMonte (7th Cir.1981), 667 F.2d 590.) Moreover, since grand jury witnesses are subject to contempt of court citations, this issue is most likely to arise during hearings instituted by the State in the circuit court. See Gelbard v. United States (1972), 408 U.S. 41, 60, 33 L.Ed.2d 179, 194, 92 S.Ct. 2357, 2367.
 4 In those hearings, defendants are in the posture of defending themselves in contempt proceedings. We believe that at such hearings the State should be required to affirm or deny the assertions of illegal electronic surveillance. Such an answer should be in the form of an affidavit by a responsible government official. In re Korman (7th Cir.1973), 486 F.2d 926, 931; see In re DeMonte; In re Grand Jury Matter (3d Cir.1982), 683 F.2d 66. But cf. United States v. Stevens (5th Cir.1975), 510 F.2d 1101 (unsworn oral and written denials of illegal surveillance were sufficient).
Requiring such an answer will allow a grand jury witness the opportunity to defend his or her refusal to testify before the grand jury. A denial of illegal electronic surveillance or an admission of authorized surveillance leaves the witness in the position of testifying or facing an order of contempt. After the admission of lawful surveillance, *648 the witness may request limited access to the documents submitted by the government to support its claim. (In re DeMonte (7th Cir.1981), 667 F.2d 590, 596; In re Lochiatto (1st Cir.1974), 497 F.2d 803. But cf. In re Persico (2d Cir.1974), 491 F.2d 1156, cert. denied (1974), 419 U.S. 924, 42 L.Ed.2d 158, 95 S.Ct. 199 (grand jury witness not entitled to a plenary hearing to test the legality of surveillance).) The Seventh Circuit found that "[d]elay in grand jury proceedings will not be appreciably increased" (667 F.2d 590, 599) and noted there is an inherent delay in the contempt hearing itself (667 F.2d 590, 599 n. 23). If, in the exercise of the court's discretion, such a request is granted, any additional hearing should be conducted without delay. (In re DeMonte (7th Cir.1981), 613 F.2d 590, 599 n. 23; In re Grand Jury Proceedings (D.C. Cir.1979), 613 F.2d 1171, 1176.) If it is discovered that the State engaged in unauthorized electronic surveillance, the witness will not be subject to an order of contempt and the court is not entangled in the illegal acts of government agents. Gelbard v. United States (1972), 408 U.S. 41, 51, 33 L.Ed.2d 179, 188-89, 92 S.Ct. 2357, 2362-63.
The State contends that its in-court denial, quoted above, was sufficient to respond to the defendants' bare claims. The State further argues that defendants failed to make a prima facie issue of electronic surveillance. (See United States v. Saade (1st Cir.1981), 652 F.2d 1126; United States v. Alter (9th Cir.1973), 482 F.2d 1016.) In order to establish such a prima facie issue, the State contends a grand jury witness must set forth specific facts such as dates of suspected surveillance, the identity, phone numbers and location of persons with whom overheard conversations occurred, and the facts showing some connection between the surveillance and the witness. United States v. Saade (1st Cir.1981), 652 F.2d 1126, 1138; United States v. Alter (9th Cir.1973), 482 F.2d 1016, 1026.
We cannot, however, accept the position adopted by the State from these cases. Neither Saade nor Alter is applicable here. The standards cited by the State were made in response to claims made by the respective defendants that their sixth amendment right to effective assistance of counsel was impaired by illegal electronic surveillance. This distinguishing factor in Alter was noted by the Ninth Circuit in the later case of United States v. Vielguth (9th Cir.1974), 502 F.2d 1257, 1259-60.
The State further argues that the strict requirements found in Alter were identified and followed by the Seventh Circuit in In re Special February 1975 Grand Jury (7th Cir.1977), 565 F.2d 407. The reference to Alter in that case was in response to the defendants' argument *649 that the government was required to make a general search of all investigative agencies. The government denied any illegal activity through the affidavits of the attorney in charge of the investigation and the FBI case agent. The court considered these affidavits, based on the personal knowledge of the affiants, to be an adequate response to the bare claims of unlawful wiretapping made by the defendants. (565 F.2d 407, 414.) The court also found the defendants presented an insufficient basis to require a general search of all investigative agencies. 565 F.2d 407, 416.
 5 A general or unsupported claim by defendant requires only a response appropriate to that claim. (United States v. Gardner (9th Cir.1980), 611 F.2d 770; see United States v. See (9th Cir.1974), 505 F.2d 845, cert. denied (1975), 420 U.S. 992, 43 L.Ed.2d 673, 95 S.Ct. 1428; In re DeMonte; In re Special February 1975 Grand Jury; United States v. Stevens.) The specificity of the prosecutor's denial and the comprehensiveness of the search on which the denial is predicated must be measured against the specificity of the allegations of illegal electronic surveillance and the strength of the support for those allegations. United States v. Gardner; see United States v. Alvillar (10th Cir.1978), 575 F.2d 1316.
 6 In the contempt hearing below, the State orally denied that the grand jury questions were derived from electronic surveillance. Defendants also claimed the ability to substantiate their claims of illegal electronic surveillance. Upon remand, defendants should be allowed to do so. The State, in turn, should reply with an affidavit consistent with this opinion.
The order of the circuit court of Cook County is affirmed insofar as it granted immunity to defendants. It is reversed insofar as it found defendants in contempt of court, and the cause is remanded with directions to conduct further proceedings consistent with this opinion. The stay of execution originally allowed by the circuit court of Cook County is to remain in effect pending the hearing on remand.
Affirmed in part, reversed in part and remanded with directions.
GOLDBERG and McGLOON, JJ., concur.