**Paul M. STORMENT, Jr.,
Plaintiff–Appellant,**

v.

**John C. O'MALLEY, Administrator, Attorney Registration and Disciplinary Commission, Defendant–Appellee.**

**No. 91–1613.**

United States Court of Appeals,
Seventh Circuit.

Argued July 10, 1991.

Decided July 30, 1991.

Warren Lupel, Katz, Randall & Weinberg, Chicago, Ill., Clyde Kuehn, Kuehn & Trentman, Paul M. Storment, Jr., Storment & Read, Belleville, Ill., for plaintiff-appellant.

Wendy J. Muchman, Attorney Registration & Disciplinary Com'n, Chicago, Ill., for defendant-appellee.

Before CUDAHY, EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

During a state court divorce hearing, plaintiff Paul Storment, an attorney, was inadvertently tape-recorded while encouraging his client to lie on the witness stand. This tape eventually made its way to the Illinois Attorney Registration and Disciplinary Commission (ARDC), where investigators put it to good use. Storment filed a suit in the district court seeking an injunction to prevent the ARDC from using the tape recording in any disciplinary proceeding. The district court entered a final judgment dismissing the suit on abstention grounds because of the pending state disciplinary action. Storment appeals.

In March, 1988, Storment represented Debra Granger in a custody dispute as part of a divorce proceeding. At a hearing which was tape-recorded, the husband's attorney called Darnell Moody as a witness. Moody testified that he and Granger had

sexual relations at the "Camelot Inn" motel while Granger's eighteen month old daughter was on the bed next to them, and that he saw Granger give the daughter a wine cooler to drink. Storment, who was surprised by this testimony, asked for a five-minute recess to consult with his client.

During the recess, everyone left the courtroom except Storment and Granger. The court reporter's tape recorder for some unexplained reason was not shut off.[1] The following discussion ensued and was recorded:

GRANGER: [T]he only reason I was seeing him was because I filed for my divorce.

STORMENT: Did he know you were separated.

GRANGER: Yeah.

STORMENT: What about the business about the booze though? What about the business about the Camelot Inn? Did that happen?

GRANGER: Yeah, it happened.

STORMENT: God-damn. What were you thinking about?

GRANGER: She was only three months—I mean eighteen months. I couldn't leave him. I don't know. I don't know.

STORMENT: You better deny it. Eighteen months old, Jesus.

GRANGER: Well, she wasn't even 18 months in '86. She was a little bitty baby. She was still in diapers. She was born in '85, in '84, December of '84. In '85 she was about a year, but I was not seeing him in '86 because right after the court date, right after my court date, me and Darnell still were talking, and I did see him then.

STORMENT: So, that didn't happen in October of '86.

GRANGER: No, it wouldn't have been October.

STORMENT: You better deny this, buddy. You better deny it.

*       *       *       *       *       *

STORMENT: This is damning. This is damning, damning. I don't know what

you're going to do with that, but you're going to have to do something with that. You're going to have to do something with that because that's going to cost you, man. It could cost you custody right there.

GRANGER: I guess. I don't know.

STORMENT: That could cost you the custody of your child right there. I mean, that's terrible. That's terrible. So, you better do something with that. Maybe the Judge won't believe that. You're awful classy.

GRANGER: What can I do? I mean I was seeing him, and I was separated from him.

STORMENT: Yeah, but I think the thing that hurts you is taking the kid in the room and screwing with the kid in the room. He said that you two had sex in the bed next to your kid, your little kid that was in the other bed. You're going to have to do something with that.

GRANGER: What can I do with it? (Inaudible).

STORMENT: I don't know. That's up to you. It could be your word against his. It's up to you.

GRANGER: Are you saying if I deny it then—

STORMENT: If you said it didn't happen, it didn't happen.

*       *       *       *       *       *

STORMENT: Well, what are you going to say about that? Are you going to deny that or not?

GRANGER: I don't know.

STORMENT: Hum?

GRANGER: I don't know.

STORMENT: Well, it's up to you. It's up to you. You're telling the truth when you say it didn't happen in '86. Okay.

GRANGER: I don't remember it happening in '86, no.

STORMENT: This guy crucified you.

GRANGER: I know.

At this point, court reconvened and Storment called Granger as a witness.

1. Storment stated during oral argument that he was not contending that the tape recorder was intentionally left running.

STORMENT: Do you ever—under oath now, do you ever remember going to a motel with your daughter with Mr. Moody?

GRANGER: No.

STORMENT: That's a lie, isn't it?

GRANGER: Yes.

STORMENT: What would possess him to tell that?

GRANGER: I don't know....

Circuit Court Judge Sheila O'Brien eventually awarded custody to Granger and granted a divorce. The now ex-husband hired a new attorney, Roza Gossage, to work on his appeal. To prepare herself, Gossage reviewed the tapes of the various hearings and came across these passages. With the court's permission, she had the tape transcribed and asked the court to reopen the custody issue. Storment moved for a temporary restraining order, an injunction and a gag order. The circuit court judge ordered a new trial and denied Storment's motions. Storment appealed and the Illinois Appellate Court held that the conversation between him and Granger was not protected by the attorney-client privilege. *In re Marriage of Granger*, 197 Ill.App.3d 363, 143 Ill.Dec. 651, 554 N.E.2d 586 (1990). The court held that conversations in which an attorney recommends to his client that the client commit perjury are not protected under the attorney-client privilege. *Id.*, at 375, 143 Ill.Dec. at 659, 554 N.E.2d at 594.

After the divorce proceedings were complete, Judge O'Brien sent a letter to the ARDC together with copies of the transcripts, and the ARDC opened an investigation. Storment responded to the notice of investigation and again raised the defense of attorney-client privilege. The investigation was referred to the ARDC Inquiry Board, and a formal complaint was subsequently filed with the Hearing Board of the ARDC alleging that Storment engaged in conduct he knew to be fraudulent in violation of Rule 7–102(a)(7) of the Illinois Code of Professional Responsibility and participated in the creation of false evidence in violation of Rule 7–102(a)(6) of the Code. Storment raised two defenses before the Hearing Board: the transcript is unreliable and incomplete, and the conversations are privileged. The disciplinary case is still pending before the ARDC.

Storment next filed this suit in district court alleging violations of the Omnibus Crime Control and Safe Street Acts of 1968. 18 U.S.C. §§ 2520–2521 (Federal Eavesdropping Statute). He sought to enjoin the ARDC from using the tape and any transcript of it. The ARDC filed a motion to dismiss, raising among other things the issue of abstention. The district court granted this motion, holding that because Storment has the opportunity to raise the federal issues in a competent state tribunal and because no bad faith, harassment or other exceptional circumstances dictate to the contrary, the court should abstain from interfering with ongoing state disciplinary proceedings.

The only issue on appeal is whether the district court erred when it chose to abstain from deciding Storment's federal claims while the state disciplinary proceedings are pending. This court reviews a district court's decision to abstain for abuse of discretion. *A.G. Edwards & Sons v. Public Bldg. Com'n*, 921 F.2d 118, 121 (7th Cir.1990). In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, the United States Supreme Court has espoused a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances. This notion of "comity" includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in the separate ways." *Id.*, at 44, 91 S.Ct. at 750.

In *Middlesex County Ethics Committee v. Garden State Bar Assoc.*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court set forth the appropriate analysis for determining whether or not *Younger* requires a district court to abstain from interfering in attorney discipli-

nary proceedings. The Court held in *Middlesex* that the question of whether or not to abstain from interfering with state attorney disciplinary proceedings is threefold:

> *first,* do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; *second,* do the proceedings implicate important state interests; and *third,* is there an adequate opportunity in the state proceedings to raise constitutional challenges.

*Id.,* at 432, 102 S.Ct. at 2521 (emphasis in original).

The first inquiry is whether the district court properly concluded that the proceedings against Storment were ongoing state judicial proceedings. Given the elaborate procedure established by the Illinois Supreme Court for disciplining attorneys, including extensive hearings and review by the supreme court, these proceedings are clearly judicial in nature. *See* Ill.Sup.Ct. Rules 751–776; *see also In re Harris,* 93 Ill.2d 285, 291–92, 66 Ill.Dec. 631, 633, 443 N.E.2d 557, 559 (1982). For example, under Rule 235 of the Rules of the Attorney Registration and Disciplinary Commission, Storment has the right to file motions regarding defects in the pleadings before the Hearing Board prior to the hearing. Storment can also ask the Illinois Supreme Court to review any issues regarding the tape recording and request that the court enter a supervisory order. *See* Ill.Sup.Ct. Rule 383.

On the second inquiry, Illinois, like all states, has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses. *Middlesex,* 457 U.S. at 434, 102 S.Ct. at 2522; *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 793, 95 S.Ct. 2004, 2016, 44 L.Ed.2d 572 (1975). This court has said as much, *see In re Daley,* 549 F.2d 469, 474–75 (7th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977), as has the Illinois Supreme Court. *See In re Rosenthal,* 73 Ill.2d 46, 56, 21 Ill.Dec. 893, 897–98, 382 N.E.2d 257, 261–62 (1978), *cert. denied,* 440 U.S. 961, 99 S.Ct. 1505, 59 L.Ed.2d 775 (1979). But Storment argues that his case is different from the one presented in *Middlesex* because he is not attempting to enjoin the ARDC's investigation of him, only to prevent the ARDC from using particular evidence. This begs the question. Illinois has an equally strong interest in regulating attorney conduct regardless of the scope of the federal lawsuit which seeks to enjoin the state proceedings. His suit, however limited, still interferes with the strong interest of Illinois in disciplining attorneys who suborn perjury.

Regarding the third inquiry on the adequacy of the opportunity to raise federal challenges in state court, Storment argues that this test is inapplicable to his case because he has raised not a constitutional challenge, but a challenge based on a federal statute. In his appellate brief, he has not articulated the significance of this difference, nor can we discern one. The Federal Eavesdropping Statute represents a comprehensive attempt by Congress to promote more effective control of crime while protecting the privacy of individual thought and action. *United States v. United States District Court,* 407 U.S. 297, 302, 92 S.Ct. 2125, 2129, 32 L.Ed.2d 752 (1972). Much of the statute was drawn to meet the constitutional requirements for electronic surveillance set out by the Supreme Court. *Id.* It makes no sense for a federal court to abstain when a case concerns a constitutional provision and to refuse to abstain in a case concerning a statute based on a constitutional provision. This is particularly so where a number of Illinois courts have had the opportunity to interpret the Federal Eavesdropping Statute in the past, including the Illinois Supreme Court, the final arbiter of disciplinary proceedings. *See Illinois v. Beardsley,* 115 Ill.2d 47, 53–54, 104 Ill.Dec. 789, 793, 503 N.E.2d 346, 350 (1986); *Illinois v. Wilson,* 196 Ill.App.3d 997, 1010, 143 Ill.Dec. 610, 617, 554 N.E.2d 545, 552 (1990); *In re Cook County Grand Jury,* 113 Ill.App.3d 639, 645, 69 Ill.Dec. 427, 431, 447 N.E.2d 862, 866 (1983); *Illinois v. Pascarella,* 92 Ill. App.3d 413, 415–17, 48 Ill.Dec. 1, 3, 415 N.E.2d 1285, 1287, *cert. denied,* 454 U.S. 900, 102 S.Ct. 403, 70 L.Ed.2d 217 (1981);

*Illinois v. Sylvester,* 86 Ill.App.3d 186, 190–92, 41 Ill.Dec. 504, 506, 407 N.E.2d 1002, 1004 (1980); *Illinois v. Turner,* 35 Ill.App.3d 550, 569–71, 342 N.E.2d 158, 172 (1976).

On the record before the district court, Storment had never tried to raise this federal claim in the state proceedings. Where that is the case, we assume that the state procedures will provide an adequate remedy in the absence of unambiguous authority to the contrary. *Pincham v. Illinois Judicial Inquiry Bd.,* 872 F.2d 1341, 1348 (7th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 497, 107 L.Ed.2d 501 (1989). He did not raise the issue during the divorce hearing or on direct appeal from the divorce, nor had he raised the issue before the ARDC. At oral argument, counsel for the ARDC informed the court that after the decision of the district court, Storment raised the Federal Eavesdropping Statute issue for the first time in his ARDC proceedings. The argument was rejected by the Inquiry Board, and he will now have recourse to the Illinois Supreme Court for review of that decision. He has made no showing that this attempt will not afford him adequate protection. Finally, Storment has not claimed that there was bad faith or harassment on the part of the ARDC or that the state rules were flagrantly and patently unconstitutional. *Younger,* 401 U.S. at 53–54, 91 S.Ct. at 754–55. Therefore he has not presented any extraordinary circumstances to indicate that abstention would not be appropriate.

Abstention is based on the theory that the accused should first set up and rely upon his defense in the state courts, even though this involves a challenge to the validity of some statute, unless it plainly appears that this course would not afford adequate protection. *Id.,* 401 U.S. at 45, 91 S.Ct. at 751 (quoting *Fenner v. Boykin,* 271 U.S. 240, 243–44, 46 S.Ct. 492, 493, 70 L.Ed. 927 (1926)). Storment had an opportunity to raise and have timely decided by a competent state tribunal the federal issues involved and because no bad faith, harassment, or other exceptional circumstances dictate to the contrary, the district court

did not abuse its discretion in abstaining. Accordingly, the judgment of the district court is

AFFIRMED.