**Khosrow B. SEMNANI and Envirocare of Utah, Inc., Plaintiff,**

v.

**Larry F. ANDERSON, Lavicka, Inc., and Nuclear Fuel Services, Inc., Defendants.**

**No. Civ. 2:99CV431G.**

United States District Court, D. Utah, Central Division.

Aug. 23, 1999.

Rodney G. Snow, Clyde, Snow, Sessions & Swenson, Salt Lake City, UT, for Khosrow B. Semnani, plaintiff.

Max D Wheeler, Snow, Christensen & Martineau, Salt Lake City, UT, Brent O. Hatch, Hatch & James, Salt Lake City, UT, for Envirocare of Utah, plaintiff.

James C. Haskins, Haskins & Associates, Salt Lake City, UT, for Larry F. Anderson and Lavicka, Inc., defendants.

John F. Waldo, Pruitt Gushee & Bachtell, Salt Lake City, UT, Thomas R Karrenberg, Scott A. Call, John P. Mullen, Anderson & Karrenberg, Salt Lake City, UT, for Nuclear Fuel Services, Inc., defendant.

### MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

Defendant Nuclear Fuel Services filed a Motion to Dismiss in this case which was scheduled for hearing on August 23, 1999. On August 19, 1999, the court was informed that plaintiffs and defendant Nuclear Fuel Services, Inc. have settled as to each other, and counsel requested this court to order dismissal as to defendant Nuclear Fuel only.

Plaintiff Khosrow B. Semnani is represented by Rodney G. Snow of Clyde, Snow, Sessions & Swenson; plaintiff Envirocare of Utah is represented by Max Wheeler of Snow, Christensen & Martineau and Brent O. Hatch of Hatch and James; defendant Nuclear Fuel Services, Inc. is represented

by Thomas R. Karrenberg, Scott A. Call and John P. Mullen of Anderson & Karrenberg and John F. Waldo of Pruitt, Gushee & Bachtell; defendants Larry F. Anderson and Lavicka, Inc. are represented by James C. Haskins.

This court now acts sua sponte to address application of the Younger abstention doctrine which, if applicable, would require this court to abstain from exercising jurisdiction. See *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Supreme Court and the Tenth Circuit have recognized that courts may address application of the Younger doctrine sua sponte. See Bellotti v. Baird, 428 U.S. 132, 143 n. 10, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); Morrow v. Winslow, 94 F.3d 1386, 1390–91 (10th Cir.1996) (raising Younger doctrine sua sponte and determining abstention required), cert. denied, 520 U.S. 1143, 117 S.Ct. 1311, 137 L.Ed.2d 475 (1997).

## FACTUAL BACKGROUND

This action is based upon claimed violations of the federal wiretap statute, 18 U.S.C. § 2515, and revolves around extensive past and present grievances and litigation between Khosrow Semnani and his company Envirocare of Utah, and Larry Anderson and his company Lavicka, Inc. From 1987 to 1993, Anderson was Director of the Utah Bureau of Radiation Control, the state agency that regulates disposal of radioactive waste. Semnani entered the business of disposing of radioactive waste by forming Envirocare in December 1987. He acquired land in Tooele County, Utah, obtained necessary equipment to run a low level radioactive waste disposal facility, became licensed and was regulated by Director Anderson of the Utah Bureau of Radiation Control until Anderson's retirement in 1993. During that period of time, and through January 1995, Semnani paid to Anderson approximately $600,000 in cash, gold coins and real estate. Semnani claims that the payments amounted to extortion under the threat of regulatory harm, and that the actions of Anderson later took the form of blackmail under the threat of public disclosure. Anderson has taken the position in ongoing litigation in state court that the payments were made pursuant to agreement between himself and Semnani. Defendant Nuclear Fuel in this action and in other litigation pending in state court has taken the position that both Semnani and Anderson willingly participated in a scheme to monopolize the market for disposal of low level radioactive waste.[1]

In 1994, and continuing into 1995, Anderson secretly taped various telephone conversations he had with Semnani. Semnani learned of these tapings sometime within that time period, and he also secretly taped at least one of the conversations. Envirocare's regular lawyer, Gary Weston, knew about the tapes in March 1995, and he secretly made tapes of conversations between himself and Anderson's lawyer, James C. Haskins, concerning settlement negotiations. A federal grand jury was supplied the tapes made by Weston and it subpoenaed the tapes made by Anderson. On March 24, 1999, Anderson was indicted for mail and tax fraud. That case pends before Judge Campbell of this court, and an ancillary proceeding, apparently also involving the tapes, pends before Magistrate Judge Alba. According to plaintiffs, the tapes have been improperly used this year in various federal administrative proceedings and were so used in 1998 in separate (now settled) federal actions filed in Colorado and Texas. It has been represented to this court that Semnani and Envirocare have repeatedly consented to the use of the tapes and transcripts in proceedings brought in state court, including

---

1. Beginning in 1987, Nuclear Fuel Services attempted to establish a competing low level radioactive waste disposal facility at Ticaboo, Utah. It abandoned that project allegedly because it was frustrated by Anderson who opposed and prevented Nuclear from obtaining a license and establishing such a facility. This court is advised that Nuclear Fuel as plaintiff in a state court proceeding is in the process of settling and dismissing Semnani and Envirocare as defendants, but maintains the action against Anderson and Lavicka.

**1048**

litigation in the Salt Lake County District Court, Case No. 970901677, *Nuclear Fuel Services v. Khosrow B. Semnani, Larry F. Anderson, et al.,* as well as ongoing Case No. 960907271, *Larry F. Anderson and LaVicka, Inc. v. Khosrow B. Semnani and Envirocare of Utah, Inc.,* which also pends in the Salt Lake County District Court. Semnani and Envirocare sharply dispute that there has been consent, waiver or lack of objection to use of the tapes in state proceedings, or elsewhere, and they do not agree that there has been consensual public disclosure of the tapes.

In the state court case in which Nuclear Fuel is plaintiff, the relevance and significance of the tapes has been presented to state court Judge David Young and he has maintained in tact a protective order entered by the Third District Court in which certain documents were permitted to be filed under seal—pending evidentiary rulings concerning use of the tapes at trial. State court Judge Sandra Peuler ordered last year that transcripts of the tapes be made available to all parties, which has been done. Some or all of the transcripts have become available to the media, and have been placed on the internet, and Judge Peuler found no basis to enter a "gag order" relative thereto.

### *LEGAL ANALYSIS*

In documents submitted to this court it was argued that the Anti–Injunction Act, 28 U.S.C. § 2283, prohibits federal courts from using declaratory or injunctive power to interfere with pending state judicial proceedings, including the exclusion of evidence. It was further urged that fundamental principles of equity preclude granting an injunction against use of the wiretap tapes where the state court could grant similar relief upon a proper showing in the case in question, and that this court should abstain from interfering with pending actions in state court because the so-called "Younger abstention doctrine" prohibits entry of an injunction or declaration by a federal court which would prevent state courts from ruling upon the admissibility of the tapes and transcripts under the circumstances presented in a particular case.

Although the hearing set for August 23, 1999, on a motion to dismiss on the aforesaid grounds has been vacated, this court will address sua sponte application of the Younger doctrine. This court does so because Younger abstention when applicable is mandatory and potentially dispositive of this court's jurisdiction.

### I.  *THE   YOUNGER   ABSTENTION DOCTRINE*

In the case of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that federal courts may not enjoin pending state court criminal proceedings, even when basic issues such as free speech are presented. Speaking for the court, Justice Hugo Black said:

> It is undoubtedly true ... that [a] criminal prosecution under a statute regulating expression may inhibit the full exercise of First Amendment freedoms. But this sort of chilling effect ... should not by itself justify federal intervention.

*Id.* at 50, 91 S.Ct. 746.

The Younger doctrine is based upon "notions of comity and federalism, which require that federal courts respect state functions and the independent operations of state legal systems." *Phelps v. Hamilton,* 122 F.3d 885, 889 (10th Cir.1997). In this regard, Justice Black in *Younger* stated that the meaning of "comity" may be best captured in the phrase "Our Federalism," which he defined as the belief that "the National Government will fare best if the states and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct. 746.

By the late 1980s, the doctrine was fully extended to private civil actions where an important state government interest is shown to exist. *See Pennzoil v. Texaco, Inc.,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298

(1989). In *Taylor v. Jaquez,* 126 F.3d 1294 (10th Cir.1997), the Tenth Circuit in applying Younger abstention stated:

... Younger articulated a narrow exception now applied to state *criminal,* ... *civil,* ... or *administrative* proceedings (citations omitted), .which commands a federal court to abstain from exercising jurisdiction when three conditions have been established. First, there must be *ongoing state criminal, civil, or administrative proceedings.* Second, the *state court must offer an adequate forum* to hear the federal plaintiff's claims from the federal lawsuit. Third, the state proceedings must involve *important state interests,* matters which traditionally look to state law for their resolution or implicate separately articulated state policies. (Emphasis added.)

## II. *APPLICATION OF YOUNGER ABSTENTION TO THIS CASE*

As noted by the Tenth Circuit in *Jacquez,* if the three conditions set forth therein have been established, the Younger abstention doctrine "commands a federal court to abstain from exercising jurisdiction." *Id.* at 1297. The court will examine whether these requirements have been established in this case.

### A. *Ongoing state proceedings*

Because they do not seek to enjoin an entire state proceeding but rather seek only a ruling and judicial declaration prohibiting use of illegally taped communications in state court and other proceedings, plaintiffs assert that such would not effectively stifle or unduly hamper a pending state civil action. However, in *Storment v. O'Malley,* 938 F.2d 86 (7th Cir.1991), the Seventh Circuit ruled otherwise. That court approved federal district court abstention rather than issuance of an injunction to prevent application of state procedures in determining the use of taped communications in a state proceeding. Younger abstention was thus applied to a federal Wiretap Act claim because of the "strong federal policy against federal court interference with pending state judicial proceedings." *Id.* at 88–89. We are confronted with essentially the same situation in this case. Here, the tapes have been discussed and no doubt will be the subject of evidentiary rulings in the light of factual circumstances presented in the pending state court proceedings between Anderson & Semnani, as well as the pending state court proceeding between Nuclear Fuel and Anderson. Clearly, pending state proceedings involving potential use of the tapes and transcripts are ongoing at this time.

### B. *Adequacy of state procedures*

Manifestly, state courts are authorized and fully able to apply federal law in state court proceedings. In this regard, the Supreme Court has stated that "[S]tate courts have inherent authority to adjudicate claims arising under the laws of the United States," *Tafflin v. Levitt,* 493 U.S. 455, 458, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990), and that state judges are "presumed competent to resolve federal issues," *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 150, 108 S.Ct. 1684, 100 L.Ed.2d 127 (1988). The Tenth Circuit has pointed out that "[M]ere apprehension that the state court will not adequately protect a federal right is not a sufficient basis for the issuance of [an] injunction." *Chandler v. O'Bryan,* 445 F.2d 1045, 1058 (10th Cir.1971). Plaintiffs claim that failure of this court to issue a judicial declaration or injunction binding state courts and proceedings concerning use of the tapes could lead to inconsistent state rulings and defeat the strong federal policy which underpins the federal wiretap statute. There has been no showing that such would be the case, or that the state forum could not properly rule upon both the federal and state wiretap issues presented in the context of the particular case. This court is convinced that the state courts offer an adequate forum to hear plaintiffs wiretap claims.

### C. *Important state interests*

In *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), a com-

panion case to Younger in which Younger abstention was applied, the Supreme Court vacated an injunction entered by a federal district court concerning evidence seized as a result of violations of state obscenity laws. The Supreme Court said: "[i]t is difficult to imagine a more disruptive interference with the operation of the state criminal process short of an injunction against all state proceedings." *Id.* at 84, 91 S.Ct. 674.

The federal interest in preserving privacy under the federal wiretap statute is the same as the state interest under the near identical state wiretap statute. Potential "exceptional circumstances" under both statutes can and should be ruled upon by the state court after review of all facts and circumstances bearing upon possible suppression of the wiretap evidence.

The case at bar involves alleged bribery of a state official who was empowered to regulate radioactive facilities in Utah. The state interest in connection with the use of wiretap evidence concerning such super sensitive and crucial state regulated business, and alleged wrongdoing relative thereto, is obvious and important. The state court can and should take appropriate action to resolve this important state interest. This would further the independence and integrity of the Utah judicial system to enforce its own orders and judgments.

Based upon the foregoing, this court invokes the Younger abstention doctrine and abstains from the exercise of jurisdiction or ruling upon the merits of the case at bar. In this regard, the court declines to execute the order of dismissal tendered by counsel for plaintiffs and Nuclear Fuel Services, Inc., and does not adopt or approve the stipulation of the parties or the terms thereof. The other motions and matters presented to this court are not reached and are not here ruled upon.[2] Accordingly, it is hereby

ORDERED that this action is dismissed without prejudice to ongoing state court proceedings.

2. No action is here taken or opinion expressed with respect to plaintiffs' Motion for Preliminary Injunction and Other Relief, NFS's Motion to Disqualify Rodney G. Snow and Max D. Wheeler, Motion to Strike Portions of Affidavits of Gary Weston, Khosrow Semnani and Jonathon Carter and various proposed orders to permit the filing of documents under seal. None of these matters need be reached in view of this court's dispositive ruling concerning application of the Younger abstention doctrine. The Clerk of this court is directed to return all documents and other filings proposed to be sealed or purportedly filed under seal but without a court order authorizing such to counsel for the party which proffered the sealed docu-

ments. The Appendix to defendant NFS's Motion to Dismiss (Document No. 12) was filed under seal by order of this court dated June 28, 1999. That order was entered because of a prior sealing and protective order issued by the state court in Salt Lake County Case No. 970901677CV. The clerk of this court is directed to deliver that sealed Appendix to the Clerk of the Salt Lake County District Court for use and further action by the state court judge in the referenced case. The state court judges can best rule upon any request to unseal that Appendix as well as requests for further sealing and/or protective orders concerning the tapes and transcripts proposed to be used in particular state proceedings.