2025 IL App (3d) 230137

Opinion filed January 17, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| THE PEOPLE OF THE STATE OF | ) | Appeal from the Circuit Court |
|---|---|---|
| ILLINOIS, | ) | of the 12th Judicial Circuit, |
| | ) | Will County, Illinois, |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-23-0137 |
| v. | ) | Circuit No. 22-CF-285 |
| | ) | |
| JORDAN HENRY, | ) | Honorable |
| | ) | Amy Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Presiding Justice Brennan and Justice Anderson* concurred in the judgment and opinion.

_____

**OPINION**

¶ 1        The defendant, Jordan Henry, appeals his convictions for aggravated vehicular hijacking,

armed robbery, attempted aggravated vehicular hijacking, and unlawful possession of a weapon

by a felon, arguing (1) the court erred when it denied his motion to dismiss the indictment for

_____

*Justice Anderson was substituted on the panel. Justice Anderson did not participate in oral argument but has fully reviewed the briefs and record on appeal.

improper venue and (2) the evidence was insufficient to establish (a) he was armed with a firearm and (b) the value of a stolen cell phone.

¶ 2                                    I. BACKGROUND

¶ 3        On March 17, 2022, the defendant was charged by indictment with aggravated vehicular hijacking while armed with a firearm (720 ILCS 5/18-4(a)(4) (West 2022)), aggravated vehicular hijacking while armed with a bludgeon (*id.* § 18-4(a)(3)), aggravated vehicular hijacking of a person aged 60 years or older (*id.* § 18-4(a)(1)), two counts of attempted aggravated vehicular hijacking while armed with either a handgun or a bludgeon (*id.* §§ 8-4(a), 18-4(a)(3), (a)(4)), two counts of armed robbery involving either a firearm or a bludgeon (*id.* § 18-2(a)(1), (a)(2)), aggravated unlawful possession of a stolen motor vehicle (625 ILCS 5/4-103.2(a)(7)(A) (West 2022)), two counts of theft (720 ILCS 5/16-1(a)(1), (b)(4), (b)(5) (West 2022)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(1) (West 2022)), and striking a police animal (510 ILCS 70/4.03(i) (West 2022)). The charges arose from two separate incidents in which the defendant robbed individuals at gunpoint in Cook County, then fled, and was apprehended in Will County.

¶ 4        On May 12, 2022, the defendant moved to dismiss the indictment, arguing Will County was an improper venue in which to try the defendant for vehicular hijacking, armed robbery, attempted vehicular hijacking, and unlawful possession of a weapon by a felon because those offenses occurred in Cook County. The defendant also noted that no gun was ever recovered in Will County. In response, the State argued that venue was appropriate in any county where any element of an offense was committed, and since theft is a lesser included offense of vehicular hijacking and armed robbery, the defendant was properly charged in any county where he could properly be charged with theft.

2

¶ 5    In response to the defendant's argument that no firearm was recovered in Will County, the State pointed to evidence establishing the defendant possessed a firearm in Cook County and argued there was "no indication that the defendant left the gun in Cook County when he took the victim's car." The State argued the defendant's possession of the firearm and his later apprehension in Will County provided a "circumstantial case that [the defendant] possessed the gun in Will County." The court denied the motion on August 1, 2022, without making any factual findings. The case proceeded to a bench trial on December 12, 2022.

¶ 6    At trial, Richara Jackson testified that on February 23, 2022, she was working as an assistant store manager at a 7-Eleven in Chicago. That morning, she saw a man enter the store, look around, make a purchase, and then return to his gray SUV. Jackson later identified the man as the defendant. After leaving the store, he sat in his car for a while, left on foot, and returned wearing different clothes. He continued to sit in his car until another customer, who was parked in front of the door, exited the store. Jackson observed the defendant in the parking lot as he "ran up on" the other customer, who looked frightened and ran away, leaving his car behind. The defendant got in his own gray SUV and drove away. Jackson testified she did not see a gun, but she saw the defendant holding his hand under his jacket, and she saw a "pointed item" under the jacket.

¶ 7    Surveillance videos captured portions of the events and were admitted into evidence. In one surveillance video, the defendant was seen running toward a car parked in front of the 7-Eleven. Only a portion of his body remained in the frame. After reaching the car, the defendant appeared to drop something small and dark, take a step back, and pick it up. The car's driver then exited the car and walked away.

¶ 8    Tony Cosich testified he was running some errands and stopped at the 7-Eleven just before 11 a.m. He parked his car, entered the store, made some purchases, and then walked back to where his car was parked and sat down inside. He had the key fob in his pocket, but he did not start the car. Instead, he put his cell phone in the "phone holder" and began entering the address where he expected to go for lunch that afternoon. He then "felt a loud gun hit up against [his] driver's side window, and then, the door was ripped open." The defendant said, "get the fuck out of the car."

¶ 9    Cosich testified to his familiarity with firearms. He stated that he had handled firearms "[h]undreds" of times. The gun was "[a] couple of feet away" and pointed at his face. Cosich, fearing for his life, got out of the car and began walking away slowly. Once he was out of the defendant's sight, he began running, and he called the police from a nearby store. Cosich ran back once he saw the police arrive, and his car was still there. His car could not be started without the key fob, which had remained in Cosich's pocket. However, Cosich's cell phone, which he had left in the car, was gone. During cross examination, the defense questioned Cosich's certainty about whether he had seen a gun, and he replied, "He had a gun." When asked again, Cosich responded, "I know he had a gun." On redirect examination, the State attempted to elicit the value of Cosich's phone, but the court sustained an objection to the State's questions, finding they were beyond the scope of cross examination.

¶ 10    Golmon Scott, a 69-year-old Uber driver, was parked about two miles from the 7-Eleven, waiting for a customer. He was driving a black Volkswagen Jetta, and he had parked in front of a gray SUV occupied by a single person. As he was waiting, he saw the defendant get out of the gray SUV, walk up to his passenger side window, which was partially rolled down, and put his arm through the window. The defendant was holding a pistol, and he pointed it toward Scott's

4

body. Scott observed that the pistol was black and "something was in the barrel." The defendant told Scott to "get the fuck out of the car." Scott got out of the car, the defendant walked around, got in, and "jetted off going westbound on Diversey," and then turned south. Scott, too, testified to his familiarity with firearms and his certainty that the object the defendant pointed at him was, in fact, a gun.

¶ 11        The State called numerous officers involved in the eventual apprehension of the defendant. At around 12:30 p.m., shortly after learning about the vehicular hijacking, police issued an emergency broadcast attempting to locate a recently hijacked black Volkswagen Jetta with Scott's license plate. Roughly one hour after the defendant hijacked Scott's car, Illinois State Police Trooper Nicholas Whitbeck noticed a car meeting its description traveling at "roughly 94 southbound on the Dan Ryan Expressway at 71st Street." He began a pursuit, which lasted "[a]pproximately an hour" and involved at least 15 officers. The defendant traveled at a high rate of speed—multiple officers testified his speed exceeded 100 miles per hour at different times—and he maneuvered in and out of traffic, passing vehicles on the shoulder. With police vehicles in pursuit, the defendant first traveled south, then west on I-80, and then north along I-294. While on I-294, the defendant abruptly swerved across multiple lanes and exited toward I-55, heading south again. The Shorewood Police Department set up "spike strips" on I-55 to disable the defendant's vehicle.

¶ 12        The spike stripes disabled the front and rear passenger tires, but the defendant continued driving for "several miles," his speeds still "anywhere from 60 to 90 miles an hour." Eventually, the defendant lost control of the car, nearly striking a marked squad car, and then crashed into a "grassy area" off the roadway. The defendant then fled on foot and entered a "swampy, tall grass area" to the right of the highway. The grass in this area was taller than several of the officers, and

5

officers were forced to wade through 6 to 12 inches of standing water. Whitbeck was among the officers chasing the defendant, and he observed the defendant "attempting to remove a jacket or a hoodie from his person and reaching around his waist." Officers had limited visibility, and a police dog was deployed to subdue the defendant. The police dog, Hades, bit the defendant on the left arm, and the defendant punched Hades several times before officers intervened and handcuffed the defendant.

¶ 13　　　None of the officers observed the defendant throw any objects out the window of the car during the chase, including any firearms. No guns or other weapons were recovered from the vehicle, the defendant's person, or the area where the defendant was arrested, and no gun was ever located or introduced at trial. Cosich's cell phone was recovered from the car.

¶ 14　　　The defendant was found guilty on all counts, and he filed a timely motion for a new trial arguing, *inter alia*, the State failed to prove his guilt beyond a reasonable doubt, and the court erred when it denied his motion to dismiss the indictment for improper venue. The motion was denied, and the defendant was sentenced to concurrent terms of 22 years' imprisonment for aggravated vehicular hijacking, 21 years' imprisonment for armed robbery, 15 years' imprisonment for attempted vehicular hijacking, 15 years' imprisonment for aggravated unlawful possession of a stolen motor vehicle, 5 years' imprisonment for unlawful possession of a weapon by a felon, and 364 days in jail for striking a police animal. For purposes of sentencing, the theft of Scott's car merged into the charge of aggravated vehicular hijacking, the theft of Cosich's cell phone merged into the charge of armed robbery, and aggravated fleeing or attempting to elude a peace officer merged into the charge of aggravated unlawful possession of a stolen motor vehicle. The defendant appealed.

¶ 15　　　　　　　　　　　　　　　　II. ANALYSIS

¶ 16       On appeal, the defendant contends (1) the circuit court erred when it denied his motion to dismiss several counts included in the bill of indictment for improper venue and (2) the State presented insufficient evidence to establish (a) he possessed a firearm during the offenses and (b) the value of Cosich's cell phone. We address each contention in turn.

¶ 17                                    A. Venue

¶ 18       We review the circuit court's ruling on a motion to dismiss for improper venue under a bifurcated standard of review. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 153-54 (2005). We will not disturb the court's factual findings unless they are against the manifest weight of the evidence, but we review its legal conclusions *de novo*. *Id.* at 154. As to the court's legal conclusion, we perform " 'the same analysis that a trial judge would perform.' " *People v. Knowles*, 2019 IL App (3d) 180190, ¶ 40 (quoting *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151). Where, as here, the court made no factual findings, we review the court's conclusions *de novo*. *People ex rel. Madigan v. Leavell*, 388 Ill. App. 3d 283, 288 (2009). The defendant argues his motion to dismiss the indictment should have been granted as to the offenses of vehicular hijacking, armed robbery, attempted vehicular hijacking, and unlawful possession of a weapon by a felon because those crimes occurred entirely in Cook County.

¶ 19       The right to be tried in the county where the offense is alleged to have been committed is guaranteed by the Illinois Constitution. Ill. Const. 1970, art. I, § 8. That right does not mandate a single exclusive location where venue is appropriate, however. *People v. Bochenek*, 2021 IL 125889, ¶ 11. Instead, the legislature has the authority to define criminal acts and establish their venue according to the nature of the crime. *Id.* In keeping with these principles, section 1-6(a) of the Criminal Code of 2012 provides that venue is appropriate in any "county where the offense was committed, except as otherwise provided by law." 720 ILCS 5/1-6(a) (West 2022).

¶ 20    In a motion to dismiss for improper venue, the defendant must make a *prima facie* showing that venue is improper. 725 ILCS 5/114-1(d-5) (West 2022). Once the defendant successfully makes a *prima facie* showing, the burden shifts to the State to prove by a preponderance of the evidence that the county it has selected is the proper place of trial. *Id.* To determine where an offense was committed for the purpose of venue, the court looks to "where the acts which constitute the offense occurred." *People v. Hagan*, 145 Ill. 2d 287, 301 (1991).

¶ 21    The defendant contends he was improperly tried in Will County for the offenses of vehicular hijacking, armed robbery, attempted vehicular hijacking, and unlawful possession of a weapon by a felon. The State concedes the defendant was improperly tried in Will County for the offense of attempted vehicular hijacking but maintains the remaining charges were appropriately tried in Will County. The State requests we apply harmless error analysis to any errors arising from trying the defendant in an improper venue.

¶ 22    At the outset, we accept the State's concession with respect to the charge of attempted vehicular hijacking. The defendant's failed attempt to hijack Cosich's car began and ended in Cook County. There is no evidence his efforts continued into Will County, and the "acts which constitute the offense" of attempted vehicular hijacking occurred entirely in Cook County. We therefore turn to the remaining charges challenged by the defendant.

¶ 23                    i. Vehicular Hijacking and Armed Robbery

¶ 24    The State contends that, although the defendant stole Cosich's cell phone and Scott's car in Cook County, the defendant was properly tried for those offenses in Will County. For this proposition, the State relies primarily on two assertions. First, citing *People v. Eggerman*, 292 Ill. App. 3d 644, 650-51 (1997), the State argues that "[v]enue is appropriate in any county in which an element of the offense occurred," and theft is an "element" of armed robbery. Second, citing

8

*People v. Smallwood*, 102 Ill. 2d 190, 193 (1984), the State asserts "simply because all of the elements of an offense have been met for the purposes of a finding of guilt, that does not mean that the offense is over." We address each argument in turn.

¶ 25    In *Eggerman*, the defendant was charged with possession of a stolen motor vehicle in Lake County and pled guilty to that offense. *Eggerman*, 292 Ill. App. 3d at 646. Subsequently, prosecutors charged the defendant with aggravated vehicular hijacking and armed robbery in Cook County because the defendant had stolen the vehicle in Cook County. *Id.* at 647. The defendant moved to dismiss the charges filed in Cook County on the grounds of double jeopardy based on his previous plea to possession of a stolen motor vehicle. *Id.* at 646. On appeal, the appellate court found "[t]he sole issue on appeal is whether the charge of possession of a stolen motor vehicle is a lesser included offense of the offenses of robbery, armed robbery, vehicular hijacking, and aggravated vehicular hijacking." *Id.*

¶ 26    The *Eggerman* court found that possession of a stolen motor vehicle is, in fact, a lesser included offense. *Id.* at 649. In reaching its conclusion, the court also rejected an alternative theory proposed by the State: that it would have been improper to bring the charges of robbery and vehicular hijacking in Lake County because those offenses occurred in Cook County and venue would have been improper. *Id.* at 650. Reasoning that theft is a lesser included offense of robbery and vehicular hijacking, thus making it an "element" of those offenses, the court observed that venue would be proper in any county in which any element of the offense occurred and rejected the State's alternative theory. *Id.* at 650-51.

¶ 27    We find *Eggerman*'s judicial *dicta* unpersuasive for two reasons. First, *Eggerman*'s articulation of the venue principles is not aligned with the language of the venue statute itself. Venue is generally proper in the county "where the offense was committed." 720 ILCS 5/1-6(a)

9

(West 2022). The statute lists specific exceptions to that rule, including inchoate offenses, which may be tried in any county in which "any act which is an element of the offense, including the agreement in conspiracy, is committed." *Id.* § 1-6(m). The general venue statute does not include the words "any element," nor does it state that venue is proper wherever a lesser-included offense may be prosecuted. *Id.* § 1-6(a).

¶ 28    Neither vehicular hijacking nor armed robbery are among the venue statute's listed exceptions and are therefore properly tried only "where the offense was committed." *Id.* When statutory language is clear and unambiguous, we apply its plain and ordinary meaning, and we have no need to resort to statutory construction. *Alternate Fuels*, *Inc. v. Director of the Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 238 (2004). "We presume each part of a statute has meaning and avoid construing a statute so as to render a portion superfluous or redundant." *Pembroke Environmental Justice Coalition v. Illinois Commerce Comm'n*, 2023 IL App (3d) 220108, ¶ 18. "We must not depart from the plain language of the [statute] by reading into it exceptions, limitations, or conditions that conflict with the express legislative intent." *Town & County Utilities*, *Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117 (2007).

¶ 29    The court in *Eggerman* cited two cases to support its articulation of the venue principles: *People v. Glass*, 239 Ill. App. 3d 916 (1992), and *People v. Lambert*, 195 Ill. App. 3d 314 (1990). *Eggerman*, 292 Ill. App. 3d at 650. *Lambert* was the first to use the "any element" language, citing to *People v. Brown*, 107 Ill. App. 3d 742 (1982), a case involving an inchoate offense. *Lambert*, 195 Ill. App. 3d at 318. *Glass* cited to *Lambert* for the same proposition. *Glass*, 239 Ill. App. 3d at 923. As noted above, inchoate offenses *are* properly tried in any county in which "any act which is an element of the offense, including the agreement in conspiracy, is committed." 720 ILCS 5/1-6(m) (West 2022). The same is not true for the general

10

venue statute. See *id.* § 1-6(a). Generally, offenses may only be tried "where the acts which constitute the offense occurred." *Hagan*, 145 Ill. 2d at 301.

¶ 30 Second, and more importantly, while theft may be a lesser included offense of most robberies (see, *e.g.*, *People v. Jones*, 149 Ill. 2d 288, 300 (1992)), theft is not an "element" of robbery. Black's Law Dictionary defines the "elements of crime" as "[t]he constituent parts of a crime—usu[ally] consisting of the *actus reus*, *mens rea*, and causation—that the prosecution must prove to sustain a conviction." Black's Law Dictionary (12th ed. 2024). As noted above, the two elements of robbery are "taking" and "force." *People v. Dennis*, 181 Ill. 2d 87, 103 (1998); *People v. Cooksey*, 309 Ill. App. 3d 839, 849 (1999) ("the gravamen of robbery is the use of force or intimidation in the taking from a person against his will"). The "taking" that accompanies a robbery need not be accompanied by the desire to permanently deprive the owner of the use or benefit of the property. See *People v. Banks*, 75 Ill. 2d 383, 391-92 (1979).

¶ 31 In other words, the "taking" required to effectuate a robbery need not be a theft because "[t]heft requires knowledge that the taking is unauthorized and an intent to permanently deprive the owner of the use or benefit of the property." *People v. McCarty*, 94 Ill. 2d 28, 33 (1983). Because theft requires proof of intent to permanently deprive and robbery merely requires a "taking," the State need not prove a theft to sustain a conviction for robbery. Therefore, even if the State were able to establish venue wherever "any element" of the offense occurred (*Eggerman*, 292 Ill. App. 3d at 650), theft is not an "element" of the offenses of robbery or vehicular hijacking. In this case, no elements of robbery or vehicular hijacking were committed outside Cook County, and since venue is proper "where the acts which constitute the offense occurred," the charges of armed robbery and vehicular hijacking were proper only in Cook County. *Hagan*, 145 Ill. 2d at 301.

11

¶ 32    The State next cites *Smallwood* to suggest the defendant's continued use of force in Will County—his reckless and erratic driving—to maintain control over Cosich and Scott's property, continued the offenses into Will County for the purpose of establishing venue. See *Smallwood*, 102 Ill. 2d at 193. In *Smallwood*, the defendant was convicted of armed robbery and aggravated battery after he and an accomplice robbed two men of their food stamps. *Id.* at 192. After the robbery was complete, the defendant shot one of the victims, first in the right leg, then in the left leg. *Id.* at 193. At sentencing, the court imposed an extended term of sentencing because the armed robbery was "accompanied by exceptionally brutal or heinous behavior." *Id.*

¶ 33    In ruling the court did not err when it imposed an extended term, our supreme court first noted " '[t]he offense of robbery is complete when force or threat of force causes the victim to part with possession or custody of property against his will.' " *Id.* at 194-95 (quoting *People v. Smith*, 78 Ill. 2d 298, 303 (1980)). The court went on to observe that additional consequences may continue to accrue following the completion of a robbery as when, for example, a murder is committed in the course of escape from a robbery, triggering the felony-murder statute. *Id.* at 195.

¶ 34    *Smallwood* does not support the State's position. *Smallwood* dealt with the application of extended-term sentencing, which does not concern the duration of the offense itself but conduct that *accompanies* the offense. *Id.* As noted above, the venue statute requires a court to determine "where the acts which constitute the offense occurred." *Hagan*, 145 Ill. 2d at 301. "Neither flight from pursuing victims nor escape is included as an element in the statutory definition of robbery. [Citation]. Thus, *** the offense of armed robbery is complete when force or threat of force causes the victim to part with possession or custody of property against his will." *Dennis*, 181 Ill.

12

2d at 103. Moreover, "the required force or threat of force must either precede or be contemporaneous with the taking of the victim's property." *Id.* at 101-02.

¶ 35    The defendant used the threat of force to cause Cosich to part with his phone and used the threat of force to cause Scott to part with his car. The threat of force concluded in each case as soon as the defendant fled the scene. Both offenses therefore began and terminated, for the purposes of determining venue, in Cook County. See *id.* The State's position is even more difficult to square with the venue statute when one considers the hour during which the defendant, having completed the vehicular hijacking, remained undetected. No evidence suggested the defendant used any force at all during that time. Subsequent offenses, even related offenses, do not grant the State the right to bring charges in the county to which a defendant flees and commits new crimes unless venue is independently appropriate in that county. See *People v. Page*, 196 Ill. App. 3d 285, 291-92 (1990). The defendant's actions therefore did not extend the crimes of armed robbery and vehicular hijacking into Will County for the purposes of determining venue.

¶ 36                    ii. Unlawful Possession of a Weapon by a Felon

¶ 37    The State contends it met its burden to prove by a preponderance of evidence that venue was properly established for the offense of unlawful possession of a weapon in Will County. In response to the defendant's motion to dismiss the charge for improper venue, the State argued the fact that the defendant committed an armed robbery and vehicular hijacking while armed with a firearm, coupled with the fact that the defendant later drove into Will County following a high-speed chase was sufficient to create a "circumstantial case that [the defendant] possessed the gun in Will County." The State noted there was "no indication that the defendant left the gun

13

in Cook County when he took the victim's car." However, the State's position misconstrues the burden of proof.

¶ 38    The defendant established a *prima facie* showing that venue was improper in Will County, and the State bore the burden of providing evidence that venue was proper. 725 ILCS 5/114-1(d-5) (West 2022). The State presented no evidence that the defendant possessed a firearm in Will County despite officers searching the defendant, the vehicle he stole, and the area to which he fled. All available evidence suggested the defendant did not possess a firearm in Will County. We must therefore conclude the State failed to meet its burden, and the circuit court erred when it denied the defendant's motion to dismiss the charge of unlawful possession of a weapon by a felon.

¶ 39                                B. Harmless Error

¶ 40    Because the court erred when it denied the defendant's motion to dismiss multiple counts of the indictment, we must consider whether to apply harmless error analysis. Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Errors may generally be described as either trial errors, which are subject to harmless-error review, or structural errors, which are not. *People v. Mullins*, 242 Ill. 2d 1, 22 (2011).

¶ 41    Our review of the relevant authority suggests the question of whether venue errors are subject to harmless error analysis is a matter of first impression. We must therefore decide whether the erroneous denial of a motion to dismiss for improper venue is the type of error that "erode[s] the integrity of the judicial process and undermine[s] the fairness of the defendant's trial." *People v. Herron*, 215 Ill. 2d 167, 186 (2005). In Illinois, errors amounting to structural error have been equated to "second prong" error, providing an exception to the procedural

14

default rule on appeal. *People v. Jackson*, 2022 IL 127256, ¶ 28. To determine which errors qualify as structural errors, our supreme court "often look[s] to the types of errors that the United States Supreme Court has found to be structural error and determine[s] whether the error being considered is similar." *Id.* at 30. Errors of this type include "a complete denial of counsel, denial of self-representation at trial, trial before a biased judge, denial of a public trial, racial discrimination in the selection of a grand jury, and a defective reasonable doubt instruction." *Id.* at 29. Although the United States Supreme Court has never explicitly described venue errors as structural errors, we find it significant that the Supreme Court has also never applied harmless error review to an error involving venue. *United States vs. Auernheimer*, 748 F.3d 525, 539 (3d Cir. 2014).

¶ 42     "The founders were so concerned with the location of a criminal trial that they placed the venue requirement *** in the Constitution in two places." *Id.* at 540; U.S. Const., art. III, § 2, cl. 3; U.S. Const., amend. VI. The right to be tried in the location where the crime occurred is a "safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *United States v. Cores*, 356 U.S. 405, 407 (1958). Recently, the United States Supreme Court considered a case in which a defendant from Alabama was improperly prosecuted for crimes in Florida. *Smith v. United States*, 599 U.S. 236, 240-41 (2023). The Court did not apply harmless error analysis, instead describing the proceedings as having been "marred by harmful trial error ***" due to the venue error. *Id.* at 241.

¶ 43     In Illinois, "[t]he issue of venue, sometimes known as vicinage, has a long history ***." *People v. Manley*, 196 Ill. App. 3d 153, 165-66 (1990) (Steigmann, J., concurring in part & dissenting in part). Its incorporation into the United States Constitution was followed by incorporation into the Illinois Constitution of 1818 (Ill. Const. 1818, art. VIII, § 9), and each

15

subsequent constitution in Illinois has continued to provide those accused of a crime with the right to an impartial jury drawn from the county where the offense occurred. Ill. Const. 1848, art. XIII, § 9; Ill. Const. 1870, art. II, § 9; Ill. Const. 1970, art. I, § 8.

¶ 44   As a matter of first impression, we agree with the defendant that a venue error is more akin to structural error and defies harmless error analysis because it "affect[s] the framework within which the trial proceeds." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991); *People v. Rivera*, 227 Ill. 2d 1, 22 (2007) (errors are amenable to harmless error review when it is "possible to qualitatively assess for harm"). We find it difficult, if not impossible, to assess the harm in this case. We can say only that if the circuit court had granted the defendant's motion, no trial would have been held in Will County on the complained-of charges. The consequences of the error are therefore " 'necessarily unquantifiable and indeterminate.' " *People v. Stoecker*, 2020 IL 124807, ¶ 24 (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006)). We conclude a court's erroneous denial of a motion to dismiss for improper venue is not amenable to harmless error analysis.

¶ 45                                  C. Sufficiency of State's Evidence

¶ 46   The defendant contends the State failed to establish beyond a reasonable doubt (1) that he possessed a firearm and (2) the value of Cosich's stolen cell phone. Having found the circuit court erred by failing to dismiss the charges involving a firearm, the first contention is rendered moot. The second contention, however, remains relevant because the charge of theft merged into the charge of armed robbery, and we have determined the circuit court erred when it failed to dismiss the charge of armed robbery.

¶ 47   "Theft is committed by the stealing of 'anything of value,' regardless of the amount thereof. [Citation]. The particular value of the property relates only to the nature and extent of

16

the penalty which may properly be imposed." *People v. Kelly*, 66 Ill. App. 2d 204, 210 (1965) (quoting Ill. Rev. Stat. 1965, ch. 38, § 15-1). The method for determining the value of a stolen item is the fair market value of the item at the time and place of the theft. *People v. Brown*, 36 Ill. App. 3d 416, 421 (1976). "The opinion testimony of one who has sufficient knowledge of the property and its value to give a reasonable estimate, received without objection, is sufficient, in the absence of contrary evidence, to establish value." *People v. Harden*, 42 Ill. 2d 301, 305-06 (1969).

¶ 48    Here, the State failed to introduce any evidence of the value of Cosich's cell phone. Although the State attempted to remedy its oversight on Cosich's redirect examination, the court sustained an objection to the State's efforts. As a result, no evidence was produced establishing the fair market value of Cosich's cell phone. In the absence of such evidence, the court was left with no basis upon which to determine the value of the cell phone, and the defendant's conviction for that offense must be reduced to misdemeanor theft pursuant to Rule 615(b)(3). See *People v. Rowell*, 229 Ill. 2d 82, 97-98 (2008) ("a reviewing court has the authority to reduce the degree of the offense of which a defendant was convicted when the evidence fails to prove beyond a reasonable doubt an element of the greater offense"); Ill. S. Ct. R. 615(b)(3) (eff. Jan. 1, 1967).

¶ 49                                    D. Remedy

¶ 50    Having accepted the State's concession that the defendant was improperly tried in Will County for attempted vehicular hijacking, and having further found the defendant was improperly tried in Will County for vehicular hijacking, armed robbery, and unlawful possession of a weapon by a felon, we vacate those convictions and remand them for a new trial. See *People v. Alexander*, 118 Ill. App. 3d 33, 38 (1983); see also *People v. Holmes*, 292 Ill. App. 3d 855,

17

862 (1997). Retrial is consonant with the federal remedy for a violation of the venue or vicinage clauses. See *Smith*, 599 U.S. at 253-54; U.S. Const., art. III, § 2; U.S. Const., amend. VI.

¶ 51 The defendant does not challenge his convictions for aggravated unlawful possession of a stolen motor vehicle, two counts of theft, aggravated fleeing or attempting to elude a peace officer, or striking a police animal, and those convictions are not disturbed by our ruling. However, at sentencing, the charge stemming from the theft of Scott's car merged into the charge of vehicular hijacking and the charge stemming from the theft of Cosich's cell phone merged into the charge of armed robbery. The defendant was therefore not sentenced for the theft of Scott's car or the theft of Cosich's cell phone. Having vacated the charges of vehicular hijacking and armed robbery, we remand the two theft charges for resentencing. As noted above, the charge arising from the theft of Cosich's cell phone is reduced to misdemeanor theft pursuant to Rule 615(b)(3).

¶ 52 III. CONCLUSION

¶ 53 The judgment of the circuit court of Will County is vacated and remanded for a new trial on the charges of vehicular hijacking, armed robbery, attempted vehicular hijacking, and unlawful possession of a weapon by a felon. The two charges of theft are remanded for a new sentencing hearing. The judgment of the circuit court of Will County is affirmed on the charges of aggravated possession of a stolen motor vehicle, aggravated fleeing or attempting to elude a police officer, and striking a police animal.

¶ 54 Affirmed in part and vacated in part; cause remanded.

18

*People v. Henry*, 2025 IL App (3d) 230137

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 22-CF-285; the Hon. Amy Bertani-Tomczak, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Santiago A. Durango, and Emily A. Brandon, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, Thomas D. Arado, and Adam Trejo, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |